# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 23, 2016

Plaintiff-Appellee,

v

No. 319724
Wayne Circuit Court
LC No. 13-005810-FH

LIONEL WRIGHT,

Defendant-Appellant.

AFTER REMAND

Before: HOEKSTRA, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant was convicted after a jury trial, of carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm, MCL 750.224f, possession of a firearm during the commission of a felony, third offense (felony-firearm), MCL 750.227b, and possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). On December 4, 2013, the trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to concurrent sentences of one to five years' imprisonment for CCW, one to five years' imprisonment for felon in possession of a firearm, and one to four years' imprisonment for possession with intent to deliver marijuana, to be served consecutively to a term of 10 years' imprisonment for felony-firearm. We affirm defendant's convictions but remand for correction of the judgment of sentence to reflect that defendant's sentences for conviction of CCW and felony-firearm run concurrently.

## I. FACTS AND PROCEEDINGS

On June 12, 2013, officers Bryan Bush and James Napier were on patrol in a scout car. While driving the wrong way on a one-way street in Detroit, Bush noticed a Dodge Durango, facing the correct direction, but parked 2½ feet from the curb. Defendant was standing outside the Durango near the driver's window, apparently conversing with its driver seated inside. Bush stopped his scout car alongside the Durango and exited. When Bush exited the scout car, he observed defendant turn away and stiffen his arm near his right side, a movement Bush himself would perform when securing an unholstered handgun. Believing defendant was concealing something from him and possibly armed, Bush directed defendant to approach him and show his hand. Defendant complied, and when defendant turned toward him, Bush saw a bulge in

-1-

defendant's front pants pocket. Unsure of what the bulge was, but concerned for his safety because of the movement suggesting a concealed handgun, Bush met defendant at the front fender of the Durango and conducted a patdown search. He recovered a loaded 9mm blue-steel pistol from defendant's waistband. When defendant could not produce a permit to carry a concealed weapon, Bush placed defendant under arrest. Bush then walked defendant to his scout car and continued the patdown search. Bush recovered from defendant a grocery bag containing 43 individual baggies of marijuana and $59 in cash.

Defendant testified that the officers approached him and asked him questions. When defendant tried to walk away, the officers detained him and the Durango's driver. The officers searched both men, but recovered nothing. Napier then walked into the home in front of which defendant was standing, which defendant stated was his brother's home, and after 10 minutes, came outside carrying a white grocery bag. According to defendant, Napier then whispered something to Bush, who handcuffed defendant. Defendant testified that Napier then placed $59 in defendant's pocket. The officers released the Durango's driver without further incident.

On his appeal by right, defendant raised, through counsel, an issue regarding hearsay and an issue concerning consecutive sentencing (to which the prosecutor conceded error). Defendant also raised several issues in a Standard 4 brief, including that trial counsel rendered ineffective assistance for not having brought a motion to suppress the evidence on the basis that the arresting officer conducted a stop and frisk without a "particularized and objective basis for suspecting [defendant] of criminal activity." *People v Shabaz*, 424 Mich 42, 54; 378 NW2d 451 (1985); see also *Terry v Ohio*, 392 US 1, 21-22; 88 S Ct 1868; 20 L Ed 2d 889 (1968). This Court vacated defendant's convictions and judgment of sentence finding that defense counsel was "ineffective for failing to move to suppress evidence of the gun and marijuana as the fruit of an illegal search and seizure, and without this evidence, there is no evidence against defendant in support of any of [defendant's] convictions." *People v Lionel Wright*, unpublished opinion of the Court of Appeals, issued June 11, 2015 (Docket No. 319724), slip op 7.

The prosecutor applied to our Supreme Court for leave to appeal, and on December 23, 2015, that Court vacated this Court's judgment. The Court remanded the case to this Court with the following instruction:

> On remand, while retaining jurisdiction, the Court of Appeals shall remand this case to the Wayne Circuit Court to conduct an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436 (1973), to determine whether the defendant was deprived of his right to the effective assistance of counsel when his attorney failed to file a motion to suppress. At the conclusion of the hearing, the circuit court shall then forward the record and its findings to the Court of Appeals, which shall address the issues presented by the defendant. [*People v Lionel Wright*, 498 Mich 955; 872 NW2d 498 (2015).]

This Court complied with our Supreme Court's instructions. See *People v Lionel Wright*, unpublished order of the Court of Appeals, entered February 3, 2016 (Docket No. 319724). We remanded this case to the Wayne Circuit Court "for an evidentiary hearing to determine whether the defendant was deprived of his right to the effective assistance of counsel when his attorney failed to file a motion to suppress." *Id*.

-2-

The trial court, on remand, after appointing new counsel to represent defendant, conducted a *Ginther*[1] hearing on April 15, 2016. All three experienced criminal defense attorneys that represented defendant in proceedings below testified at the *Ginther* hearing: Rene Cooper (preliminary examination); Leslie Cooper (pretrial hearings); and James O'Donnell (trial counsel). All three defense attorneys testified that they believed, on the basis of Officer Bryan Bush's testimony at the preliminary examination and review of available police reports, that Officer Bush had articulated objective and particularized reasons, in light of the officer's experience, to suspect defendant was engaged in criminal activity and that defendant might be armed. Consequently, all three defense attorneys testified that they lacked a good-faith basis to file a motion to suppress and that, had they filed such a motion, it would have been denied.

The testimony of Bush at the preliminary examination supports the testimony of defense counsel. Bush testified that he was a 16-year veteran Detroit police officer, with 9 years of experience working as a narcotics officer. On stopping to investigate the Durango, Officer Bush described in detail defendant's actions in immediately moving away and "hampering his side" the way the officer himself would do when securing an unholstered gun. Defendant's immediate moving away as Officer Bush exited the squad car also heightened Bush's suspicion. In explaining why he stopped to investigate the Durango, Bush testified that, "based upon my experience sometimes when . . . well often times when the car is off the curb and when you have a driver that's seated and then a person outside the car, it's not always but most of the time[,] the majority of the time there's some kind of narcotic activity going on based upon my experience . . . ." Bush further explained that his focus was on the Durango until defendant moved away and made gestures indicating concealment of a handgun.

Bush testified he ordered defendant to turn around and when defendant did so, Bush observed a bulge in defendant's right front pocket, which did not concern Bush as much as the gestures that indicated to him that defendant had a concealed handgun in his right waistband. Bush patted defendant down for officer safety, recovering a completely concealed blue-steel handgun from defendant's waistband. Defendant did not have a license to carry a concealed weapon, was arrested for CCW, and searched incident to his arrest; Bush then recovered a grocery bag containing 43 individual baggies of marijuana from defendant's right front pocket. At the conclusion of the preliminary examination, the district court found that Officer Bush "stated articulable suspicion as to why he [focused on defendant] after his initial approach because of the car and further investigation revealed firearm and marijuana."

At the *Ginther* hearing, defense counsel O'Donnell conceded that Bush's testimony at trial was different from his testimony at the preliminary examination. At trial, Bush "didn't emphasize the circumstance of the man leaning into the car, and he didn't emphasize as much the clutching of the gun." But, O'Donnell did not want to confront Bush regarding these discrepancies because his client was asserting that the police had planted the drugs and gun on him and to "push Officer Bush, he might reiterate what he had said at the exam and make my client -- and give more facts to the jury about my client having a gun." O'Donnell still believed

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-3-

a motion to suppress was not viable because the testimony given by Bush at the preliminary examination would be elicited by the prosecutor by refreshing Bush's memory. O'Donnell did not want to raise the issue when he believed the likely effect of refreshing Bush's recollection would result in denial of the motion and eliciting testimony more adverse to defendant.

At the conclusion of the *Ginther* hearing, and further briefing, the trial court stated its findings of fact and conclusions of law on the record. The trial court noted that Bush's testimony at trial was quite different from his testimony at the preliminary examination but also that defense counsel had to make their determination regarding whether to file a motion to suppress based on the information available to them at the time, the preliminary examination transcript. The trial court found that Bush's testimony at the preliminary examination was "much more precise in his articulation of why he believed there was reasonable suspicion to believe the defendant was armed." Consequently, the trial court ruled, based on the testimony at the preliminary, that defense counsel's performance was reasonable. Specifically, the court ruled that Officer Bush "was basing it off his own experience of what he does when he has a gun on him . . . that was a reasonable suspicion with specifically articulated facts . . . ." Consequently, the trial court ruled that defense counsel's performance did not fall below objective standards of reasonableness by not filing a pretrial motion to suppress. The trial court also determined that O'Donnell's decision not to raise the issue during trial, when Bush's testimony was much more vague, was not unreasonable. The trial court accepted O'Donnell's strategic reasoning that had he raised the issue at trial, the prosecutor would have refreshed Bush's memory with his prior testimony; the motion to suppress would have failed, and testimony more damaging to defendant's case would have been presented to the jury.

## II. REMAND ISSUE

### A. STANDARD OF REVIEW

This Court reviews the trial court's findings of fact for clear error and questions of law regarding the claim of ineffective assistance de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004); see also *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984) ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). In order to overcome this presumption and obtain a new trial, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. This Court will not substitute its judgment for that of counsel regarding a reasonable choice of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *Strickland*, 466 US at 689; *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

### B. DISCUSSION

The United States and Michigan Constitutions do not prohibit all search or seizures, only those searches or seizures that are unreasonable. *Shabaz*, 424 Mich at 52. In general, a search conducted without a warrant is unreasonable unless probable cause exists and the circumstances

establish an exception to the warrant requirement. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). Well-established exceptions to the warrant requirement include "exigent circumstance, searches incident to a lawful arrest, stop and frisk, consent, and plain view." *People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000).

Police officers are also permitted to approach an individual in a public area and ask questions. *Shabaz*, 424 Mich at 56-57. Such activity is permitted because it does not amount to a seizure under the Fourth Amendment. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). An individual approached in such a manner remains free to ignore the officer and go on his way. *Id*. A seizure occurs only when "in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). A seizure may happen by use of physical force or by submission to an officer's show of authority. *People v Lewis*, 199 Mich App 556, 559; 502 NW2d 363 (1993).

The constitutional limitations on police searches or seizures apply only if a search or seizure has, in fact, occurred. *People v Frohriep*, 247 Mich App 692, 699; 637 NW2d 562 (2001). In this case, Officer Bush's initial decision to stop his patrol car near the Durango to investigate the situation was not a seizure under the Fourth Amendment. Bush had done nothing to indicate that the parked Durango, its driver, or defendant, were not free to leave. Rather, Bush simply approached individuals in public to engage them in conversation, a permitted activity that does not amount to a seizure under the Fourth Amendment. See *Shabaz*, 424 Mich at 56-57. But when Bush observed defendant turn away and make a "hampering" movement like one Bush himself would perform to secure an unholstered handgun, Bush ordered defendant to "turn around and come back to [Bush] and show [him] his hand . . . ." When defendant complied with these commands, defendant was seized under the Fourth Amendment because a reasonable person would not believe that he was free to leave. *Jenkins*, 472 Mich at 32.

"Police officers may make a valid investigatory stop if they possess reasonable suspicion that crime is afoot." *Champion*, 452 Mich at 98. The Supreme Court held in *Terry*, 392 US at 30, that such a "stop and frisk" is permitted by the Fourth Amendment:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude *in light of his experience* that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. [Emphasis added.]

"Reasonable suspicion entails more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Champion*, 452 Mich at 98. "The detaining officer must have had a particularized and objective basis for the suspicion of criminal activity." *Id*. at 98-99. The conduct that a police officer observes may be perfectly legal activity, but it is the degree of suspicion that an experienced officer attaches to otherwise legal activity that is important to determine if particularized suspicion arises. See *People v*

*Oliver*, 464 Mich 184, 202-203; 627 NW2d 297 (2001); *People v Nelson*, 443 Mich 626, 632, 635; 505 NW2d 266 (1993). Thus, "factors that in isolation appear innocent may, in combination, provide a police officer with reasonable suspicion to justify an investigative stop[.]" *Oliver*, 464 Mich at 193. Once an officer has made a valid investigatory stop, the officer "may perform a limited patdown search for weapons if the officer has reasonable suspicion that the individual stopped for questioning is armed and thus poses a danger to the officer." *Champion*, 452 Mich at 99.

"There is no bright line rule to test whether the suspicion giving rise to an investigatory stop was reasonable, articulable, and particular." *Nelson*, 443 Mich at 635. "The totality of the circumstances as understood and interpreted by law enforcement officers, not legal scholars, must yield a particular suspicion that the individual being investigated has been, is, or is about to be engaged in criminal activity." *Id*. at 632, citing *United States v Cortez*, 449 U.S. 411, 418; 101 S Ct 690; 66 L Ed 2d 621 (1981) (opining that the circumstances and inferences drawn therefrom "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement"). And, in assessing whether a police officer has acted reasonably in conducting a "stop and frisk," courts must accord "due weight . . . to the specific reasonable inferences which [the police officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 US at 27.

In this case, deference must be accorded Officer Bush's testimony on the basis of his sixteen years' of law enforcement experience—including 9 years in narcotics enforcement—that the scenario the officers observed as they approached the Durango parked away from the curb and defendant standing nearby conversing with the Durango's occupants, "the majority of the time there's some kind of narcotic activity going on." See *Nelson*, 443 Mich at 636. And, while flight "does not alone supply the particularized, reasoned, articulable basis to conclude that criminal activity was afoot that is required to justify the temporary seizure approved in *Terry*," it "is reasonable to conclude that the defendant's flight . . . might reasonably have heightened the officer's general suspicion that the defendant must have had something to hide . . . ." *Shabaz*, 424 Mich at 62-63. Indeed, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v Wardlow*, 528 US 119, 124; 120 S Ct 673; 145 L Ed 2d 570 (2000). Further, when viewed in context, flight from a scene often associated with drug trafficking raises even more suspicion. Thus, unprovoked flight from an area of heavy narcotics trafficking at the approach of a police officer "is not necessarily indicative of wrongdoing, but it is certainly suggestive of such," and would justify an officer in suspecting that the fleeing person was engaged in criminal activity. *Id*. at 124-125. Moreover, Officer Bush observed that defendant's movements while he was immediately moving away looked as if he were "hampering his side," an action Bush recognized as movements that Bush himself would perform when securing an unholstered gun.

At the conclusion of the preliminary examination, the district court found that Officer Bush "stated articulable suspicion as to why he [focused on defendant] after his initial approach because of the car and further investigation revealed firearm and marijuana." Officer Bush's testimony at the preliminary examination supported this judicial determination because Bush had articulated "a particularized and objective basis for suspecting [defendant] of criminal activity." *Shabaz*, 424 Mich at 54. Further, Bush's observation of defendant's movements that were consistent with concealing a handgun in his waistband, were objective, specific, and articulable

facts to warrant a police officer of Bush's considerable experience to not only suspect that defendant may be engaged in criminal activity but that he might be armed with a concealed handgun. See *Terry*, 392 US at 21-23, 30. As the *Terry* Court explained, an officer need not be certain that a suspect is armed. *Id*. at 27. Rather, "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id*. Further, the trial court, after the *Ginther* hearing, did not err by finding that the record at the preliminary examination stage supported defense counsel's conclusion that because the stop and frisk of defendant was lawful, a motion to suppress would have been denied. See *Champion*, 452 Mich at 98-99, 118.

Additionally, the trial court did not err by finding that defendant's trial counsel, when Bush testified more vaguely than his testimony at the preliminary examination, made a reasonable strategic choice not to move to suppress the evidence or cross-examine Bush regarding his prior testimony. Specifically, counsel feared that such a motion would (1) result in Bush's memory being refreshed, (2) the motion being denied on the basis of clearer testimony such as presented at the preliminary examination, and (3) would have resulted in the presentation before the jury of testimony more damaging to defendant after the revival of Bush's memory. Given Bush's prior testimony, defense counsel's strategic decision was not unreasonable. Declining to raise an issue may well be consistent with sound trial strategy. See *Unger*, 278 Mich App at 242-243. Defense counsel's determination that the risks of moving to suppress the evidence at trial outweighed the possible benefits of doing so is a strategic decision within the wide range of reasonable professional decisions not subject to hindsight driven reassessment on appeal. *Strickland*, 466 US at 689-690. This Court will not second-guess defense counsel's judgment on matters of trial strategy. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

In summary, the testimony of Officer Bush at the preliminary examination supported that Bush had articulated, under the totality of circumstances, "a particularized and objective basis for suspecting [defendant] of criminal activity," *Shabaz*, 424 Mich at 54, and Bush articulated objective and specific facts that, in light of Bush's considerable experience, would warrant a reasonably prudent police officer to suspect that defendant may be engaged in criminal activity and that he might be armed with a concealed handgun. See *Terry*, 392 US at 21-23, 30. Therefore, Officer Bush's limited search for a concealed handgun was reasonable under the Fourth Amendment. *Id*. at 30. Because Officer Bush's stop and frisk of defendant was lawful, a motion to suppress would have been denied. *Champion*, 452 Mich at 98-99. Consequently, defendant has failed to establish that defense counsel committed a serious error that fell below objective standards of reasonableness but for which a reasonable probability exists that the trial outcome would have been different. *Trakhtenberg*, 493 Mich at 51; see also *Kimmelman v Morrison*, 477 US 365, 375; 106 S Ct 2574; 91 L Ed 2d 305 (1986).

## III. OTHER ISSUES

## A. NAPIER'S TESTIMONY

Defendant first argues that although his objection was sustained and the statement stricken, he was denied a fair trial because Napier provided a hearsay statement while being examined by defense counsel. We disagree.

Although defense counsel objected to Napier's statement as hearsay, because the trial court sustained the objection and defendant requested no further relief, "defendant did not receive an adverse ruling from the trial court from which to appeal." *People v Nash*, 244 Mich App 93, 96; 625 NW2d 87 (2000). Under such circumstances, we treat the issue as one raising an unpreserved claim of error. Our review is limited to determining whether plain error affected defendant's substantial rights. *Id*. at 96-97.

Under the plain error standard of review, defendant must show that an error occurred, that the error was plain, i.e., clear or obvious, and that the error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To demonstrate that an error affected his substantial rights, defendant must demonstrate that it was outcome-determinative. *Id*. Even if defendant satisfies these requirements, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks, brackets, and citation omitted).

Napier testified that after defendant's arrest, defendant asked Napier to obtain from a neighbor the keys to defendant's home, which he said was the home in front of which the Durango was parked. Defense counsel asked Napier if he talked to someone at the house and Napier responded that the "neighbor advised me that [defendant] here sells drugs." Defense counsel objected to the statement on hearsay grounds. The trial court sustained the objection and struck the statement. Defendant now argues that a new trial is required because although the statement was stricken and the jury told to disregard it, the jury could not ignore it, and its effect was too great for a limiting instruction to cure the error. We disagree.

"A voluntary and unresponsive statement does not ordinarily constitute error." *People v Kelsey*, 303 Mich 715, 717; 7 NW2d 120 (1942). Generally, if a witness provides unresponsive testimony that contains inadmissible information, a timely objection and the trial court's striking of that testimony will cure any error. *People v Barker*, 161 Mich App 296, 307; 409 NW2d 813 (1987). The testimony of police officers, however, is subject to a higher level of scrutiny because they "have a special obligation not to venture into such forbidden areas." *People v Holly*, 129 Mich App 405, 415-416; 341 NW2d 823 (1983). The same test applies even when the unresponsive testimony is provided in response to a question by the defense. *Id*.

An unresponsive answer is one that provides information not requested. *Barker*, 161 Mich App at 307. Defense counsel asked Napier if he talked to the neighbor. Instead of either confirming or denying that he had done so, Napier testified that the neighbor told him that defendant "sells drugs." Because defense counsel asked only if a conversation took place and not for the substance of the conversation, we agree the response was arguably unresponsive. *Id*. This statement was also clearly hearsay if used to prove the truth of the matter asserted, MRE 801(c), and, therefore, inadmissible. MRE 802.

Still, defendant cannot demonstrate that the statement was outcome-determinative. In response to defense counsel's objection, the trial court struck the testimony, which is presumed to cure the error. *Barker*, 161 Mich App at 307. Defense counsel also thoroughly addressed the statement during his closing argument, repeatedly telling the jury that the statement had been stricken and could not be considered. Further, the trial court instructed the jury that it had "stricken testimony that was heard[,]" and that it was not to "consider those things in deciding the case." "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Moreover, the prosecutor's case against defendant was strong. Bush recovered a loaded pistol and a grocery bag containing 43 smaller bags of marijuana from defendant's pants. The only conflicting testimony came from defendant, who testified to an opportunistic scheme by two officers to plant incriminating evidence on defendant and frame him for multiple crimes, all without any apparent motivation and while allowing another man similarly situated to leave the scene without even being issued a citation for an apparent parking violation. The jury was asked to weigh the two versions of events and found defendant's version incredible. Given the circumstances, we cannot conclude that a single statement, one which the jury was repeatedly told to disregard, was outcome-determinative. Accordingly, defendant is not entitled to relief. *Carines*, 460 Mich at 763; *Nash*, 244 Mich App at 96-97.

## B. CONSECUTIVE SENTENCES

Defendant next argues that the trial court erred by ordering that his CCW sentence be served consecutive to his felony-firearm sentence. Because defendant did not object to his sentences in the trial court, the issue is not preserved. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Accordingly, we review the issue for plain error affecting substantial rights. *People v Callon*, 256 Mich App 312, 332; 662 NW2d 501 (2003).

The error in this case was plain and the prosecutor concedes that defendant's judgment of sentence must be amended to reflect that defendant's CCW sentence must run concurrently to his felony-firearm sentence. See *People v Cortez*, 206 Mich App 204, 207; 520 NW2d 693 (1994). While defendant's sentences for being a felon in possession of a firearm and possession with intent to deliver marijuana must run consecutively to his sentence for felony-firearm, MCL 750.227b(2), his CCW sentence may not run consecutively to his felony-firearm sentence, *Cortez*, 206 Mich App at 207. The error also affects defendant's substantial rights because, absent the error, defendant's CCW and felony-firearm sentences would run concurrently. Because defendant has satisfied the plain error test, defendant's judgment of sentence must be amended to reflect that his CCW and felony-firearm sentences run concurrently.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

In addition to the issue on remand, defendant argues that trial counsel was ineffective for (1) failing to move for a mistrial after the trial court struck Napier's hearsay testimony, and (2) failing to call three witnesses. We disagree.

This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional question whether a defendant was denied the ineffective assistance of counsel. *Trakhtenberg*, 493 Mich at 47. To establish ineffective assistance of

counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. at 51. Because defendant did not move for a new trial or an evidentiary hearing on the basis of these claims, review is limited to the facts contained in the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

With respect to defense counsel's failing to move for a mistrial after Napier testified to the neighbor's statement, we find that the record supports that the decision was a matter of trial strategy. During his closing argument, counsel maintained that the officers had lied to the jury and that it was defendant who had told the truth. Counsel reminded the jury that the trial court struck the testimony but then argued that this statement was further evidence that Napier lied on the stand. Thus, it appears that counsel's strategy was to rely on the statement as evidence supporting defendant's version of events rather than to seek a mistrial. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Counsel is not ineffective simply because his strategy was unsuccessful. *Heft*, 299 Mich App at 84. And in any event, counsel did object to the statement; the objection was sustained, and the statement was stricken from the record. The trial court also instructed the jury that it could not consider any testimony stricken by the court. Given the general presumption that striking such testimony is sufficient to cure any error, *Barker*, 161 Mich App at 307, and the presumption that proper instructions cure most errors, *Abraham*, 256 Mich App at 279, we conclude defendant was not prejudiced by counsel's failure to move for a mistrial. Therefore, defendant is not entitled to relief. *Trakhtenberg*, 493 Mich at 51.

Defendant next argues that trial counsel was ineffective for failing to locate and present three witnesses[2] who defendant believes "had material knowledge of the event[s] in the continuum of this criminal transaction . . . ." Decisions regarding what witnesses to present are presumed to be matters of trial strategy which this Court will not second-guess on appeal. *Rockey*, 237 Mich App at 76. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant provides no explanation of what information these witnesses could have provided; consequently, he has not demonstrated that he was deprived of a substantial defense. Further, this Court's review is limited to the existing record, a record which does not contain any testimony by these witnesses. Without having any evidence of what evidence could have been provided by these witnesses, it is impossible to evaluate what impact, if any, these witnesses would have had on the outcome of the trial. Because defendant cannot demonstrate that a different outcome would have been reasonably probable, he is not entitled to relief. *Trakhtenberg*, 493 Mich at 51.

---

[2] According to defendant's brief, the three witnesses are the Durango's driver, "the neighbor officer Napier talked to," and "the other parties don't know last name but address, was given to defense counsel along with the rest and where all three work [sic]."

For the reasons discussed in Parts II and III, we affirm defendant's convictions but remand for correction of the judgment of sentence to reflect that defendant's sentences for conviction of CCW and felony-firearm run concurrently.  We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Peter D. O'Connell