PEOPLE v HISTED

1. CRIMINAL LAW—EVIDENCE—SUFFICIENCY OF EVIDENCE—JURY—
   VERDICT.

   There was sufficient evidence present, if believed by the jury, to
   sustain a verdict of guilty in a trial for assault with intent to
   rob while armed even though the trial record showed that
   certain of the state's witnesses could not positively identify
   defendant as the robber, where the record also showed that
   several of the state's witnesses, including a fingerprint expert,
   established that defendant was the robber and was present at
   the scene and perpetrated the crime in question.

2. CRIMINAL LAW—EVIDENCE—UNRESPONSIVE REMARKS—PRIOR CRIMI-
   NAL RECORD—FAILURE TO OBJECT—TRIAL STRATEGY.

   It was not reversible error to admit in evidence the unresponsive
   remarks to proper questions of counsel which indicated defend-
   ant's prior criminal record where defendant did not take the
   stand and counsel for defendant failed to object because an
   unresponsive answer to a proper question is not usually held as
   error, and further, it is plausible that defense counsel let the
   error pass without objection because of trial strategy.

3. WITNESSES—CROSS-EXAMINATION—INCONSISTENT CONDUCT.

   It is not improper cross-examination to question witnesses as to
   the conduct on their part at variance and inconsistent with
   what would be natural or probable if their statements on direct
   examination were true.

4. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PRODUCTION
   FOR EXAMINATION—DEFENDANT'S KNOWLEDGE—FAILURE TO
   ACT.

   A defendant cannot complain that a res gestae witness was not

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 226.
   Conviction of a criminal offense without evidence as denial of due
   process of law. 80 ALR2d 1362.
[2] 21 Am Jur 2d, Criminal Law § 585.
[3] 58 Am Jur, Witnesses § 626.
[4] 29 Am Jur 2d, Evidence § 186.

produced for examination at trial when the existence, if not the identity, of the res gestae witness was made known to the defendant at trial, if not before, and defendant did not move for indorsement or production of the witness.

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 October 15, 1974, at Lansing. (Docket No. 17471.) Decided November 26, 1974.

Patrick D. Histed was convicted of assault with intent to rob while armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *F. Jack Belzer,* Assistant Prosecuting Attorney, for the people.

*Wistrand, Wistrand & Brendle,* for defendant.

Before: HOLBROOK, P. J., and R. B. BURNS and BEBEAU,* JJ.

HOLBROOK, P. J. On February 16, 1973, the defendant was found guilty by a jury of assault with intent to rob while armed, MCLA 750.89; MSA 28.284. Defendant was sentenced on April 12, 1973 to a term of from 20 to 30 years in prison.

The records show that Robert Haggerty, the bartender at the Jet Bar, had known the defendant for quite a few years. He testified that defendant came in about 1:45 a.m. on November 15, 1972, ordered a 7-7, talked with him about roofing and asked him for a "sack". Defendant had a gun and told him to "fill it up". Defendant took ones, fives, tens, and twenties from the cash register and then told all the men in the bar to throw their

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

billfolds on the floor. Defendant had him (Haggerty) check some of the wallets and then ordered everybody into the cooler.

Edward Rooker was in the bar when the incident occurred but was not sure that defendant was the man with the gun in the bar since defendant had a beard at the time of trial.

Daniel Dowr, Jr., was also in the Jet Bar at the time. Dowr had $30–$35 taken and identified defendant as the man with the gun that night.

William McClure had 15 cents taken from him but was unable to recall much of the incident. McClure, however, did not think that defendant looked like the man with the gun, possibly because the man with the gun did not have a beard.

Kay Bare said that the defendant resembled the man with the gun at the Jet Bar on November 15 even though the man in the bar did not have a beard. She had seen defendant in the bar prior to and during the incident but prior to seeing defendant in court, singled out as the accused, Ms. Bare would not have paid much attention to him.

Joseph Gelinski was having a drink in the bar when the bartender said that there was a hold-up and tried to quiet people down. He got a good look at the defendant and recognized him even though he did not have a beard and haircut on the night in question.

Gerald Werth testified that he got a good look at the man with the gun on the night in question. Werth identified defendant in court, noting that he had grown a beard since the incident.

Robert McCormick, although present, could not recall what had occurred on the night in question.

Herbert Payne, Assistant Superintendent, Records and Identification Bureau, Flint Police De-

partment, identified a print found on a glass from the Jet Bar as being that of the defendant.

The defense called Margaret Kerperien, defendant's sister, who testified that defendant came into Marja's Bar, where she worked, about 11 p.m. on the night in question. Defendant sat with his sister, Charles and Shirley Prieur, and Pat Reamer. Margaret Kerperien also testified that defendant left Marja's at approximately 2 a.m. because he was sick but returned before he could have gone the three blocks to the Jet Bar and return. Shirley Prieur and Pat Reamer substantiated Margaret Kerperien's testimony. Pat Reamer also testified that defendant had a beard at the time.

Leroy Smith attested to the fact that he heard defendant asking to be let out of Marja's Bar around 2 a.m. on the night in question. And Helen Van Echouette, an employee of Marja's Bar, who was working at the time, testified that the defendant was in Marja's from 1 to after 2 a.m.

Defendant raises several issues on appeal which we will deal with in proper order.

I

Was there sufficient evidence to support a jury verdict of guilty of the crime of assault with intent to rob while armed, MCLA 750.89; MSA 28.284?

While the record in this case does show that certain of the state's witnesses could not positively identify defendant as the robber, the record does show that several of the state's witnesses could not positively identify defendant as the robber, the record does show that several of the state's witnesses, including a fingerprint expert, established that defendant was the robber and was present at

the Jet Bar and perpetrated the crime in question. There was sufficient evidence present, if believed by the jury, to sustain a verdict of guilty. *People v Boynton,* 46 Mich App 748; 208 NW2d 523 (1973); *People v John Joseph Palmer,* 392 Mich 370; 220 NW2d 393 (1974).

## II

Did the unresponsive remarks to proper questions indicating a prior criminal record constitute reversible error where defendant did not take the stand and counsel for defendant failed to object or move to strike?

Responding to a question from defense counsel, Robert Haggerty stated:

"*Q. (By David Moore, defense counsel):* How many times did you see Patrick Histed prior to this particular evening?

"*A.* I've known him and his sister and family, well, I know his sister for quite a few years. This goes back about 20 years when I worked as a supervisor out at Juvenile Home."

During his cross-examination of Shirley Prieur, the prosecutor received the following answers:

"*Q. (By Mr. Palus, assistant prosecutor):* You've known the defendant for about three years?

"*A.* Yes.

"*Q.* Did you drink with him often?

"*A.* Well, couldn't have been too often; he just got out of Jackson."

The reason defense counsel probably did not object to Haggerty's response was because defense counsel had asked the questions. As for Shirley Prieur's answers, they were not responsive to the

questions and were not followed up by the prosecutor. Defense counsel probably remained silent so as not to emphasize such comments for the jury. In the case of *Detroit v O'Connell,* 19 Mich App 538; 172 NW2d 875 (1969), wherein the Court cited *People v Todaro,* 253 Mich 367; 235 NW 185 (1931), it was ruled that an irresponsive answer to a proper question is not usually error. We further rule that even if the admission of the evidence was error, it was not prejudicial, for it is plausible that the defense counsel let the error pass without objection because of trial strategy. See *People v Gardner,* 37 Mich App 520; 195 NW2d 62 (1972). We rule that it was not reversible error.

## III

Was it proper cross-examination by the prosecutor to question witnesses as to their conduct which may have been inconsistent with what would have been probable had their statements on direct examination been true?

This issue was considered and properly disposed of in *People v McClow,* 40 Mich App 185; 198 NW2d 707 (1972). Therein, defendant argued that the trial court had erred in allowing the prosecution to cross-examine an alibi witness concerning that witness's failure to come forward with the alibi at any time prior to trial. The Court held at 40 Mich App 193; 198 NW2d 711–712:

"[I]t was not improper cross-examination to interrogate the witness as to the conduct on his part at variance and inconsistent with what would be natural or probable if his statements on his direct examination were true. The credibility of a witness may be attacked by showing that he failed to speak or act when it would

have been natural to do so if the facts were in accordance with his testimony." (Citation omitted.)

We find no error present.

## IV

Did prejudicial error occur where a res gestae witness was not produced at trial even though testimony at trial indicated that said witness identified a person other than defendant as the perpetrator of the crime charged?

In *People v Bennett,* 46 Mich App 598, 619–620; 208 NW2d 624, 636 (1973), *lv to app granted* 390 Mich 772 (1973), the Court lists several exceptions to the general rule which requires production of a res gestae witness for examination at trial:

"(1) When the prosecution makes a showing of due diligence in attempting to produce the witness, *People v Gibson,* 253 Mich 476; 235 NW 225 (1931) and *People v Kern* 6 Mich App 406; 149 NW2d 216 (1967);

"(2) When the testimony of the missing res gestae witness would be merely cumulative, 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 605, p 782;

"(3) When the res gestae witness was a participant in the crime, *People v Lyle Brown* 37 Mich App 25; 194 NW2d 450 (1971);

"(4) When the identity of the res gestae witness is made known to the defendant during trial, or even before, and defendant does not move for the indorsement or production of the witness, *People v Gibson, supra; People v Rasmus,* 8 Mich App 239; 154 NW2d 590 (1967); *People v Love,* 18 Mich App 228; 171 NW2d 33 (1969); *People v Printess C Jackson,* 11 Mich App 727; 162 NW2d 163 (1968); *People v May,* 34 Mich App 130; 190 NW2d 739 (1971); *People v Fuston Thomas,* 36 Mich App 23; 193 NW2d 189 (1971); *People v Williams,* 42 Mich App 278; 201 NW2d 286 (1972)."

The facts of the present case fit the fourth excep-

tion. Here, the existence, if not the identity of the res gestae witness was made known to the defendant at trial, if not before, and defendant failed to pursue the matter. Defendant did not move for indorsement or production of the witness and cannot now complain.

Affirmed.

All concurred.