PEOPLE v BARKER

Docket No. 89618. Submitted December 9, 1986, at Lansing. Decided July 7, 1987.

Michael J. Barker was convicted following a jury trial in the Clinton Circuit Court of possession of less than fifty grams of cocaine and possession of marijuana. The trial court, Randy L. Tahvonen, J., sentenced defendant to concurrent terms of from 1½ to 4 years imprisonment on the cocaine conviction and to one year imprisonment on the marijuana conviction. Defendant appeals.

The Court of Appeals held:

1. The trial court did not err in permitting testimony about an attempt to arrest the defendant and an ensuing exchange of gunfire between defendant and federal agents which occurred prior to and on the same day that defendant's house was searched and the controlled substances were found. The testimony was relevant to an issue in controversy and was admissible. There was no abuse of the trial court's discretion and no miscarriage of justice.

2. Defense counsel's strategy of not immediately objecting to a statement by Michigan State Police Trooper David Emerson that he had found a letter from defendant's wife accusing defendant of turning their son into a dope dealer was not unreasonable.

3. The trial court did not abuse its discretion in denying a mistrial on the basis of Trooper Emerson's "dope dealer" statement. The statement was an unresponsive statement that volunteered information not requested. Any mischief could have been cured by a curative instruction had defendant requested one.

Affirmed.

REFERENCES

Am Jur 2d, Appeal and Error §§ 797 *et seq., 880 et seq.*
Am Jur 2d, Criminal Law §§ 967, 984-987.
Am Jur 2d, Evidence § 251.
Am Jur 2d, Witnesses, §§ 435, 436, 523 *et seq.*
Modern status of rule as to test in federal court of effective representation by counsel. 26 ALR Fed 218.

M. J. SHAMO, J., dissented. It is his belief that the trial court abused its discretion in denying a mistrial on the basis of Trooper Emerson's "dope dealer" statement. Although he does not believe that the prosecutor was guilty of any deliberate misconduct, he believes that the highly prejudicial remark could reasonably have been anticipated. A curative instruction would have been wholly inadequate to alleviate the manifest prejudice which resulted. He would reverse and remand for a new trial.

1. EVIDENCE — APPEAL.

The admission or exclusion of evidence is generally within the trial court's discretion and will not be overturned absent a clear abuse of that discretion; a trial court's improper admission or exclusion of evidence must result in a miscarriage of justice before an appellate court will find error requiring reversal.

2. EVIDENCE — CRIMINAL LAW — PRIOR BAD ACTS — RULES OF EVIDENCE.

The admission of evidence of prior bad acts by a defendant is not violative of the rule prohibiting the admission of such evidence if the evidence is relevant and probative of an issue raised at trial (MRE 404[b]).

3. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

Ineffective assistance of counsel may be shown where defense counsel failed to perform at least as well as a lawyer with ordinary skills and training in the criminal law, conscientiously protecting his client's interests undeflected by conflicting considerations, or where he made a serious mistake but for which the defendant would have had a reasonably likely chance of acquittal.

4. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

Courts do not substitute their judgment for that of trial counsel in matters of trial strategy.

5. MOTIONS AND ORDERS — MISTRIALS — APPEAL.

The grant or denial of a motion for a mistrial rests in the trial court's sound discretion and an abuse of discretion will only be found where denial of the motion deprives the defendant of a fair trial; the test is the defendant's inability to get a fair trial; a mistrial will not be declared as a consequence of any mere irregularity which is not prejudicial to the rights of the defendant.

6. CRIMINAL LAW — EVIDENCE — WITNESSES — UNRESPONSIVE STATE-
   MENTS — MISTRIALS.

   Unresponsive statements by prosecution witnesses generally are
   not grounds for declaring a mistrial, and the failure of defense
   counsel to request a curative instruction regarding a gratuitous
   answer generally will preclude appellate review in the absence
   of a showing of manifest injustice.

7. CRIMINAL LAW — EVIDENCE — WITNESSES — UNRESPONSIVE STATE-
   MENTS.

   A defendant is denied a fair trial where the prosecution knows in
   advance that the witness will respond in an unresponsive
   manner or conspires or encourages such a response.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Jon W. Newman,* Prosecuting Attorney, and *R. L. Koenigsknecht,* Chief Assistant Prosecutor, for the people.

*Robert B. Bellgowan, Jr.,* for defendant.

Before: MACKENZIE, P.J., and ALLEN and M. J. SHAMO,* JJ.

ALLEN, J. Defendant was found guilty by a jury of possession of less than fifty grams of cocaine, MCL 333.7212(1)(a) and (b); MSA 14.15(7212)(1)(a) and (b), MCL 333.7214(a) and (b); MSA 14.15(7214)(a) and (b), and possession of marijuana, MCL 333.7401(1) and (2)(c); MSA 14.15(7401)(1) and (2)(c). Defendant was sentenced on October 28, 1985, to concurrent terms of from 1½ to 4 years in prison on the cocaine conviction and to one year imprisonment on the marijuana conviction. Defendant appeals as right, raising two issues. We affirm.

On May 5, 1984, pursuant to a search warrant, United States Secret Service agents, Michigan state police officers and Clinton County deputy

_____

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

sheriffs cooperated in a search of defendant's premises on Bancroft Road in Grand Ledge. The search was conducted for the purpose of seizing any counterfeit currency that was on the premises. Defendant was not at home at any time during the search but had been there earlier that day. The police seized counterfeit currency, a small quantity of cocaine and about 3½ pounds of marijuana from the home. At the time of trial, defendant was serving two years probation for a separate federal counterfeit currency conviction.

The search occurred because defendant and Michael Langdon were being investigated for possession of counterfeit currency. Langdon had just been released from prison a few weeks prior to the search. Defendant testified that Langdon had lived at defendant's house for approximately two weeks before the search. Earlier on the day of May 5, 1984, defendant and Langdon had been involved in an altercation with federal agents. The agents had planned to arrest the two on counterfeit currency charges, but defendant and Langdon had evaded the agents in an encounter in which there were collisions and shots exchanged between the agents and defendant and Langdon. The search of defendant's premises was then conducted.

At trial, defendant's defense was that he did not have possession of the controlled substances, because he had not been living at the house for the two weeks prior to the search due to the fact that he did not want to be around Langdon. Consequently, defendant claimed that he did not know the controlled substances were on the premises. A scale was found in defendant's bedroom, but defendant claimed he used the scale to reload shotgun shells.

At trial, evidence of the altercation between defendant and federal agents on May 5, 1984, was

brought out, over defendant's objection, on redirect examination of United States Secret Service Agent Joseph Viviano. The prosecutor was allowed to elicit this testimony to counter defendant's claim that he was not at his house and, therefore, did not know about the controlled substances. Prior to Viviano's redirect examination testimony, defense counsel had asked every prosecution witness who was present at defendant's house during the search if they had ever seen defendant there. The trial court permitted the redirect testimony on the theory that the testimony was relevant to show the jury why defendant was not at home during the search.

Later in the trial, the prosecutor asked Michigan State Police Trooper David Emerson if he had found anything in the house indicating who was the owner or occupier of the house. The following exchange took place:

*Q:* [*By the prosecutor*] All right. And while you were in that house, did you find or observe or see anything that would indicate who the owner was, the person occupying that house?

*A:* The original—first room I started to check was the kitchen area, the cupboard of the kitchen, and there's a small cupboard up above the place where the refrigerator is built in. On top of the refrigerator I seen an envelope addressed to Mr. Barker.

*Q:* From whom?

*A:* I don't remember from whom on the envelope. We did read the contents of the envelope, though.

*Q:* Who was that letter from?

*A:* My understanding or impression after I read it was from his wife.

*Q:* So apparently—*did you get any feel from that particular letter whether or not she was living in that house at that time?*

*A:* I—from what the letter stated, *I got the impression she was not living there.* It was a letter addressed to him referencing, I guess, coming down on him. *She was accusing him in the letter of turning their son into a dope dealer.* The school he was attending—

*Q:* And she wasn't going to let him see the child anymore or something?

*A:* Right.

Defense counsel did not object to the question or answer in which Emerson made reference to defendant's turning his son into a dope dealer. Instead, defense counsel waited a short time until his cross-examination of Emerson to ask for a conference with the trial court off the record. After the prosecutor rested the people's case, the trial court held a conference out of the jury's presence in which it became clear that defense counsel, at the off-the-record conference during his cross-examination of Emerson, had brought a motion for a mistrial on the basis of the "dope dealer" reference. The trial court denied the motion for mistrial, holding that defense counsel should have objected to the question since it called for a hearsay response.

On appeal two claims of error are raised: (I) Did admission of testimony concerning defendant's prior conduct on the day of the search constitute an abuse of the trial court's discretion mandating reversal? (II) Did the trial court abuse its discretion in denying defendant's motion for a mistrial, or motion for a new trial, based on a prosecution witness's statement concerning "turning [defendant's] son into a dope dealer"?

I

Defendant contends that the trial court erred in

permitting, over objection, testimony about the attempt to arrest defendant and the ensuing exchange of gunfire between defendant and federal agents on May 5, 1984, the day of the search of his house. The trial court permitted the testimony because it tended to show why defendant was not at home at the time of the search. Defense counsel had previously inquired of prosecution witnesses whether they had seen defendant at the house.

The testimony of defendant's shoot-out with federal agents was evidence of other bad acts. Admission of such evidence is prohibited unless permitted under MRE 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.

In order to admit evidence under MRE 404(b), the following four requirements must be met:

> (1) [T]here must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be

substantially outweighed by the danger of unfair prejudice. [*People v Golochowicz,* 413 Mich 298, 309; 319 NW2d 518 (1982).]

In general, the admission or exclusion of evidence is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion. *People v Solak,* 146 Mich App 659, 673; 382 NW2d 495 (1985). A trial court's improper admission or exclusion of evidence must result in a miscarriage of justice for an appellate court to find error requiring reversal. MCL 769.26; MSA 28.1096.

However, in the instant case the disputed testimony was not introduced for the purpose of proving the bad character of the defendant. Instead, it was introduced for the relevant purpose of explaining why the defendant was not home when his house was searched. It was also relevant to refute defendant's explanation that the reason he was not home for two weeks before the search was that he did not want to be around Langdon. Testimony that earlier on the day of the search Langdon and defendant exchanged shots with federal agents and escaped arrest clearly refuted defendant's claim. The testimony was relevant to an issue in controversy and under MRE 401 was "relevant." As such it was admissible. *People v McKinney,* 410 Mich 413, 418-419; 301 NW2d 824 (1981). For these reasons we find no abuse of the trial court's discretion and no miscarriage of justice. Admission of evidence of a prior bad act is not violative of MRE 404(b) if the evidence is relevant and probative of an issue raised at trial. *People v Freeman,* 149 Mich App 119, 121-122; 385 NW2d 617 (1985).

II

The question whether Trooper Emerson's dope

dealer statement so prejudiced the jury that a mistrial should have been ordered presents a more difficult problem. It is argued that because defense counsel failed to immediately object and ask for a curative instruction defendant was denied effective assistance of counsel. Appellate counsel for defendant asserts that "but for this serious mistake" defendant had a reasonable chance of acquittal. In *People v Hunter*, 141 Mich App 225, 229; 367 NW2d 70 (1985), our Court stated the test for assessing ineffective assistance of counsel claims as follows:

> The first branch of the inquiry focuses on the Sixth Amendment right to counsel and requires that defense counsel perform at least as well as a lawyer with ordinary skills and training in the criminal law and must conscientiously protect his client's interest undeflected by conflicting considerations. Second, ineffectiveness of counsel may also be shown where defense counsel makes a serious mistake but for which defendant would have had a reasonably likely chance of acquittal.

At the hearing on the motion for a new trial defense counsel explained that the reason he did not immediately object and request a cautionary instruction on the trooper's statement was to avoid reemphasizing it. Obviously, counsel's decision was a matter of trial strategy. Courts do not substitute their judgment for that of trial counsel in matters of trial strategy. *People v Carr*, 141 Mich App 442, 452; 367 NW2d 407 (1985). Under the circumstances existing when the statement was made, we are unable to conclude that the strategy was unreasonable. Futhermore, defendant now claims that no cautionary instruction could have cured the prejudice from the answer. If this is so, then a timely objection would not have helped anything,

and, thus, it cannot be said that, but for the failure to object, defendant would have had a reasonably likely chance of acquittal.

Defendant's next and strongest argument is that the trial court erred in denying defendant's motion for a mistrial. According to defendant, quite apart from the question of whether the trooper's statement was hearsay, admission of the disputed statement "tainted the presumption of innocence of the defendant to such a degree that the trial court could not do anything to erase the impression of defendant turning his son into a dope dealer." Ergo, a mistrial or a new trial should have been ordered. As noted earlier, trial counsel moved for a mistrial and subsequently moved for a new trial. Both motions were denied. Although the issue is extremely close, we find no error.

The power to declare a mistrial should "be used with the greatest caution, only under urgent circumstances, and for very plain and obvious causes." 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 698, p 426. A mistrial will not be declared as a consequence of any mere irregularity which is not prejudicial to the rights of the defendant. *People v Watson,* 307 Mich 596; 12 NW2d 476 (1943). The grant or denial of a motion for a mistrial rests in the trial court's sound discretion and an abuse of discretion will only be found where denial of the motion deprives the defendant of a fair trial. *People v Green,* 131 Mich App 232; 345 NW2d 676 (1983). The test is the defendant's inability to get a fair trial. *People v Partee,* 130 Mich App 119; 342 NW2d 903 (1983); 2 Gillespie, *supra,* p 429. In the instant case, if prejudicial error occurred, it came from witness Emerson's volunteered and unresponsive statement. Generally, unresponsive statements by pros-

ecution witnesses are not grounds for declaring a mistrial.

> A witness cannot bring error into a case by volunteering inadmissible testimony which is immediately stricken out. It may be true that such remarks work a certain amount of mischief with the jury, but a conviction is to be tested on appeal by the rulings of the judge. A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the jury; and if what he or she says or does improperly is likely to do much mischief, it is presumed that the judge will apply the proper corrective measures in his or her instructions if requested to do so. Unresponsive testimony by a prosecution witness, although error, is not necessarily grounds for reversal. Generally, the failure of defense counsel to request a curative instruction regarding a gratuitous answer will preclude appellate review of the issue in the absence of a showing of manifest injustice. [2 Gillespie, *supra,* § 600, pp 203-204.]

Application of the foregoing principles of law to the instant case indicates that the trial court did not abuse its discretion in denying a mistrial. Each prosecution witness was asked on direct examination whether there was any item of property in the house which would indicate ownership or possession of the house. When Trooper Emerson was asked that question, he responded that he found an envelope addressed to defendant on the refrigerator. When next asked who the envelope was from, he replied that it was a letter from defendant's wife. He was then asked whether he could tell from the letter whether the wife was living in the house. That question was clearly probative of whether defendant lived there too, since if defendant's wife lived there, it would be likely that

defendant also resided there. The first part of the trooper's answer to the question was directly on point. He stated he "got the impression she was not living there." The second part of the trooper's answer, "she was accusing him in the letter of turning their son into a dope dealer," was totally unresponsive. It volunteered information not requested in the question asked.

Any mischief worked by reason of the unexpected and volunteered response could have been cured by a curative instruction had defense counsel moved for a curative instruction. However, for tactical reasons counsel decided to not make the request. Further, unresponsive statements equally or far more egregious than the statement made in the instant case have been found not to be grounds for a mistrial. *People v Stegall,* 102 Mich App 147; 301 NW2d 473 (1980) (witness, when asked if defendant was a bragger, responded: "Not really. He had mentioned . . . that he had killed a guy or something in North Carolina."); *People v Yarbrough (On Remand) (On Rehearing),* 86 Mich App 105; 272 NW2d 345 (1978) (witness, when asked if he knew defendant, replied: "Yes, I met him in the penitentiary."); *People v McQueen,* 85 Mich App 348; 271 NW2d 231 (1978) (witness, when asked how long he had known defendant, responded: "I first met him . . . when he had gotten out of county jail"); *People v Histed,* 56 Mich App 630; 224 NW2d 721 (1974) (witness, when asked if he drank with defendant often, replied: "[C]ouldn't have been too often; he just got out of Jackson.").

Of course, if the prosecution knew in advance that the witness would respond in the manner indicated or somehow conspired or encouraged the response to which the objection is taken, the defendant is denied a fair trial. 2 Gillespie, *supra,* § 600. We reject defendant's claim that the prosecution's

purpose in having Trooper Emerson testify about the contents of the letter was to inject highly inflammatory evidence in the presence of the jury. The question asked Emerson was no different than the question asked of other witneses. Furthermore, upon reconsideration after being presented with a copy of the transcript, the respected trial judge backed away from his initial judgment that the trooper's response was intentionally and knowingly asked by the prosecutor. In the absence of any indication in the transcript that the prosecution was at fault, we decline to find an abuse of discretion.

Finding no error on the issues raised on appeal, defendant's convictions and sentence are affirmed.

MacKenzie, P.J., concurred.

M. J. Shamo, J. *(dissenting)*. I respectfully dissent from the majority's holding that the trial court did not abuse its discretion in denying a mistrial on the ground of a witness' reference to a letter describing defendant as a "dope dealer." I would reverse and remand for a new trial.

The question presented is whether a witness' improper comment which was unresponsive to the question posed by the examining attorney was so prejudicial that defendant was denied a fair trial. The proper resolution of this question is controlled by the two-pronged test set forth in *People v Stegall*, 102 Mich App 147, 151-152; 301 NW2d 473 (1980), lv den 412 Mich 877 (1981):

> If such a prejudicial response could reasonably have been anticipated by defense counsel, we would tend to agree with the defendant that a mistrial was required and that the defendant's delayed motion for a new trial should have been granted. . . . However, the witness's prejudicial

response was clearly unanticipated. A nonresponsive volunteered answer to a proper question is not cause for granting a mistrial.

* * *

Nevertheless, this Court must decide whether the prejudicial effect of the incompetent testimony has resulted in manifest injustice . . . and whether the prejudicial effect of the incompetent testimony could have been cured by a cautionary instruction by the trial judge.

In the instant case, reversal is required under either prong. First, although I do not mean to suggest that the prosecutor was guilty of any deliberate misconduct, I do conclude that the prejudicial remark volunteered during prosecutorial questioning "could *reasonably* have been anticipated." Unlike in *Stegall,* the party conducting the examination presumably had unrestrained pretrial access to the police witness. Even though the prosecutor is the defendant's adversary at trial, the prosecutor has a duty "to see that the defendant has a fair trial and to protect the interest of the people, who are as concerned with protecting the innocent as they are with convicting the guilty." *People v Williams,* 114 Mich App 186, 198; 318 NW2d 671 (1982), lv den 422 Mich 909 (1985). The prosecutor may not close his eyes to the possibility that one of his witnesses will inject prejudicial matter into evidence.

Second, the nature of the volunteered reference was manifestly prejudicial. The characterization of defendant as a dope dealer by defendant's wife could have left a powerful impression on the jury. It was highly, albeit improperly, probative of defendant's familiarity with drugs, which could have influenced the jury to conclude that the drugs found in defendant's home were subject to his possession. Most of the cases relied upon by the

majority were decided in the context of references by witnesses to the defendant's prior incarcerations for undisclosed reasons. *People v Yarbrough (On Remand) (On Rehearing),* 86 Mich App 105; 272 NW2d 345 (1978); *People v McQueen,* 85 Mich App 348; 271 NW2d 231 (1978); *People v Histed,* 56 Mich App 630, 634-635; 224 NW2d 721 (1974). Unlike those cases, the witness' reference in the instant case had a direct bearing on the issues of guilt and innocence. I conclude that a curative instruction would have been wholly inadequate to alleviate the prejudice incurred by defendant. Cf., *People v Alexander,* 118 Mich App 112, 114-115; 324 NW2d 550 (1982).

The trial court abused its discretion in its denial of a mistrial. Defendant was deprived of a fair trial. I would reverse and remand for a new trial.