# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICARDO CORTEZ STANFORD,

Defendant-Appellant.

UNPUBLISHED
April 11, 2017

No. 329388
Wayne Circuit Court
LC No. 15-000121-01-FC

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

After his first trial ended in a deadlock, a jury convicted defendant of assault with intent to murder and two weapons charges arising from the shooting of Jaguar Stephens. Defendant contends that his counsel allowed the prosecution to violate his right to confront the witnesses against him and that the court should have declared a mistrial based on unresponsive and prejudicial testimony from the lead detective. Neither of these challenges bears merit. However, the court calculated defendant's time served based on an incorrect arrest date. We affirm defendant's convictions but remand for the ministerial correction of his judgment of sentence.

## I. BACKGROUND

On the afternoon of May 13, 2014, Jaguar Stephens went to a Detroit Dairy Queen with his brother Richard. Richard noticed a young man wearing a skull cap pulled down over his forehead and large sunglasses. The man and his friend followed Richard and Jaguar to the back of the line and circled around them. When the skull-cap-clad man was within arm's reach of Richard, he pulled out a gun and shot Jaguar twice in the chest. Richard fled and the man allegedly fired three shots at him. Richard is a licensed concealed weapon carrier and removed his weapon when he reached a safe distance. The shooter ran away when he saw Richard's gun and Richard gave chase, but was unable to apprehend him.

Police required Richard to remain at the scene while an ambulance took Jaguar to the hospital. Fearing for his brother's life and anxious to join him at the hospital, Richard admitted that he gave a less than accurate description of the shooter. The following day, Richard told Detroit police Detective Loren Lozon that the shooter was a "black male, dark skin, around five foot ten tall, 170 pounds, skull cap, Cartier glasses, medium build" and clean shaven. Jaguar never saw his shooter as he was looking at his phone at the time.

-1-

Richard's description of the shooter was too general to lead Detective Lozon to a suspect. However, two days after the shooting, Lozon received two anonymous tips from the Crime Stoppers hotline naming defendant as the shooter. Detective Lozon placed a photo of defendant into a photographic array. Richard selected defendant as the shooter within "seconds."

Ultimately, defendant denied even being at the scene. He presented the testimony of an acquaintance who had been at the Dairy Queen at the time of the shooting. This witness claimed she did not see defendant that day. The jury rejected this defense and convicted defendant as charged.

## II. CONFRONTATION CLAUSE

Defendant contends that his trial counsel should have objected when Detective Lozon testified regarding the Crime Stoppers tips and that the admission of this evidence was erroneous. Defendant filed a motion to remand to the trial court for a *Ginther*[1] hearing, which this Court denied. *People v Stanford*, unpublished order of the Court of Appeals, entered June 6, 2016 (Docket No. 329388). Therefore, our review of counsel's performance is limited to mistakes apparent on the existing record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). The defendant must overcome the presumption that the challenged action was sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). But "[t]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

"A defendant has the right to be confronted with the witnesses against him or her." *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007), citing US Const, Am VI; Const 1963, art 1, § 20. Pursuant to the confrontation clauses of the federal and state constitutions, out-of-court testimonial statements are inadmissible unless the declarant is "unavailable at trial and the defendant had a prior opportunity for cross-examination." *Chambers*, 277 Mich App at 10. "A statement by a confidential informant to the authorities generally constitutes a testimonial statement." *Id*. But even out-of-court testimonial statements may be admitted "for purposes other than establishing the truth of the matter asserted." *Id*. at 10-11. One such purpose is "to show why police officers acted as they did. . . ." *Id*. at 11.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

In *Chambers*, this Court rejected the defendant's claim that information about an informant's tip to an FBI agent violated the defendant's right of confrontation. In that case, "the lead detective testified that he received a phone call from an FBI agent who told him that one of the agent's informants recognized the man in the still photographs [of the offense] as defendant." *Id*. at 10. This Court explained:

> In the present case, the challenged testimony did not violate defendant's right of confrontation. The testimony was not offered to establish the truth of the informant's tip. Rather, it was offered to establish and explain why the detective organized a surveillance of defendant's home and how defendant came to be arrested. Because the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted, the testimony did not violate defendant's right of confrontation. [*Id*. at 11.]

Similarly in *People v Putnam*, 309 Mich App 240, 245-246; 870 NW2d 593 (2015), the defendant raised a confrontation challenge to a police officer's testimony about a Crime Stoppers tip. The officer "testified that he received a tip through Crime Stoppers that the individual who shot the victim was named 'Mike' and that he 'lived on Central.' " *Id*. at 246. The officer investigated "and discovered that defendant fit the description of the tip." *Id*. at 247. Just as in this case, the officer then used the defendant's photograph in a lineup which was shown to witnesses of the offense. *Id*. This Court held:

> In this context, it is clear that the tipster's statement was not elicited from [the officer] to prove the truth of the informant's statement, i.e., that "Mike" committed the murder; rather, it was used to explain why [the officer] put a photograph of defendant in the photographic array. Because the Confrontation Clause does not prevent the use of out-of-court testimonial statements to show why a police officer acted as he did, the admission of this testimony did not violate defendant's right of confrontation and he has not shown plain error. [*Id*. at 247 (citation omitted).]

This case is identical to *Putnam*. Before receiving the Crime Stoppers tips, Detective Lozon had only a general physical description provided by a witness. Detective Lozon explained why he chose to include defendant's photo in the photographic array—because he received two Crime Stoppers tips naming defendant as the potential shooter. Just as in *Putnam*, and similar to *Chambers*, Detective Lozon's testimony regarding the Crime Stoppers tips "show[ed] why [he] acted as he did," and not to prove the truth of the statements. The admission of this evidence was not erroneous and counsel was not ineffective for failing to raise a meritless objection. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

### III. MISTRIAL BASED ON UNRESPONSIVE TESTIMONY

Defendant further contends that the trial court improperly denied his motion for a mistrial after Detective Lozon referred to defendant's arrest photograph and claimed that "burner phones," such as defendant's, are often used in crimes. These references were highly prejudicial, defendant insists, based on the weakness of the evidence in this case. "We review a trial court's

decision to deny a motion for a mistrial for an abuse of discretion." *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). "A court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009).

We first note that any error caused by Detective Lozon's testimony that burner phones are often uncovered in criminal cases was remedied by defense counsel's questioning of the witness. On cross-examination, Detective Lozon admitted that many people use burner or track phones and that defendant's possession of such a phone was not actually incriminating.

Detective Lozon did improperly refer to defendant's arrest photo. Defendant called Detective Lozon as a defense witness so he could directly examine him. Defense counsel grilled the detective regarding why he chose the individuals placed in the photographic lineup with defendant. Counsel noted that the other five men were older than defendant. When the detective indicated that the photo he had of defendant showed his hair and included facial hair, counsel retorted that hair should not have been an important factor in the photos as Richard did not see the shooter's hair. Finally, Detective Lozon stated, "Yes, ma'am. They have to match the defendant's *last arrest record picture*, and that's what I had." (Emphasis added.)

Defendant objected and the jury was excused. Defendant then moved for a mistrial, noting that Detective Lozon had been warned at both the current and last trial not to venture into the topic of defendant's arrest 10 days after the current offense for carrying a concealed weapon. During argument, defendant focused on the allegedly intentional nature of the state actor's improper comment. The prosecutor focused on the effect the statement had on the jury. Ultimately, the court ruled that a curative instruction was sufficient to remedy any prejudice. Accordingly, the court instructed the jury:

> *THE COURT.* All right. Ladies and gentlemen, I'm going to give you an instruction right now. You are to disregard and ignore the reference made by Detective Lozon in his answer to a question which mentioned defendant's arrest photo. It cannot be used in any way by you in deciding this case.
>
> Can each of you follow and apply this instruction in acting as jurors in this case?
>
> *MEMBERS OF THE JURY.* Answered affirmatively.

"A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Bauder*, 269 Mich App 174, 195; 712 NW2d 506 (2005) (quotation marks and citation omitted). "[A] mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988). "The power to declare a mistrial should 'be used with the greatest caution, only under urgent circumstances, and for very plain and obvious causes.'" *People v Barker*, 161 Mich App 296, 305; 409 NW2d 813 (1987), quoting 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 698, p 426.

"[A]n unresponsive, volunteered answer to a proper question is not cause for granting a mistrial." *People v Gonzales*, 193 Mich App 263, 266-267; 483 NW2d 458 (1992) (quotation marks and citation omitted). A mistrial is usually only justified if "the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). As noted in *Barker*, 161 Mich App at 306, quoting 2 Gillespie, § 600, pp 203-204:

> "A witness cannot bring error into a case by volunteering inadmissible testimony which is immediately stricken out. It may be true that such remarks work a certain amount of mischief with the jury, but a conviction is to be tested on appeal by the rulings of the judge. A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the jury; and if what he or she says or does improperly is likely to do much mischief, it is presumed that the judge will apply the proper corrective measures in his or her instructions if requested to do so. Unresponsive testimony by a prosecution witness, although error, is not necessarily grounds for reversal. . . ."

When the offending witness is a police officer, however, our scrutiny must be more stringent.

> When an unresponsive remark is made by a police officer, this Court will scrutinize that statement to make sure the officer has not ventured into forbidden areas which may prejudice the defense. *People v Page*, 41 Mich App 99; 199 NW2d 669 (1972). Police witnesses have a special obligation not to venture into such forbidden areas. *People v McCarver (On Remand)*, 87 Mich App 12, 15; 273 NW2d 570 (1978)[.] [*People v Holly*, 129 Mich App 405, 415-416; 341 NW2d 823 (1983).]

In *Page*, 41 Mich App at 100-101, the police witness volunteered that he "observed [the defendant] in front of a dope den." The defendant immediately objected and requested a mistrial. *Id*. The trial court denied the motion. This Court reversed. This Court acknowledged, "When a witness for any reason gives an irresponsive answer and which is not competent evidence, and the answer is suppressed at once, the case must be a very peculiar and very strong one which would justify a reversal for such fault or mistake of the witness." *Id*. at 101, quoting *People v Tutha*, 276 Mich 387, 393; 267 NW 867 (1936). However, this Court held:

> We are of the opinion that in this case, despite the fact that the court cautioned the jury to disregard the statement when the court was charging the jury, the statement was sufficiently prejudicial to compel the grant of a mistrial. The statement was made by a police officer, one who would normally command the respect of the jury. The statement was not made in response to a question, in fact the officer made the uncalled-for statement while court and counsel were discussing the defendant's objection to a line of questioning designed to bring out that information. The statement, by its nature, was extremely inflammatory; it associated the defendant, in the minds of the jury, with either or both traffic and use of narcotics. And, of course, that information bears no relevance whatever to the defendant's guilt or innocence of the crime charged. And, finally, while the

evidence adduced at defendant's trial is certainly sufficient to support the jury's conclusions, there is something less than a strong case against the defendant, and the gratuitous remark interjected into the record might well have irreparably damaged defendant's opportunity to receive a fair trial. [*Page*, 41 Mich App at 101-102.]

And in *People v Jackson*, 313 Mich App 409, 427-428; 884 NW2d 297 (2015), this Court warned of the dangers of witnesses who do not follow directions. The *Jackson* Court found that a new trial was not warranted where the prosecutor twice instructed the witness "not to discuss the content of the [threatening text] message" and yet the witness did so anyway. In *Jackson*, the testimony was not elicited by anyone and the prosecution made clear through additional questioning that no one was charged in relation to the alleged threats. *Id*.

The trial court in this case acted within its discretion in determining that a mistrial was unnecessary. Even though this case involved a police officer whom the court had warned not to mention the CCW case, the isolated reference to an unspecified arrest photo was not so egregious that its prejudicial effect could not be remedied. And the prosecutor played no role in creating the error. Furthermore, the trial court provided a curative instruction to the jury, advising them not to use the comment for any reason. Jurors are presumed to follow the instructions given. *People v Rodgers*, 248 Mich App 702, 717; 645 NW2d 294 (2001).

Moreover, the identification evidence was not so weak that the improper comment rendered the entire proceeding unfair. Richard Stephens did provide conflicting descriptions of the shooter at the scene and at the hospital the following day. But Richard explained his inconsistency and insisted that the description given at the hospital was accurate. Richard admitted that the shooter's forehead was covered by his skull cap and much of his face was screened by his sunglasses. However, he described that the glasses were only lightly tinted and he could discern the shooter's features. And although Richard claimed to have poor vision at close range during the first trial, he explained at the second trial that his vision deficit merely required a few seconds to focus when reading and imposed no impediment in identifying large features, such as the shooter's visage, when he was within arm's reach. Accordingly, we discern no ground for relief.

IV. JAIL CREDIT

Finally, defendant contends that the trial court relied on the wrong arrest date when calculating his time served. The prosecution agrees that defendant was arrested on November 14, 2014, not November 16, and therefore is entitled to 294 days credit. To remedy this error, we remand to the trial court for the ministerial correction of the judgment of sentence.

We affirm, but remand for the correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra