*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAWN GALE ROSENBROOK,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2026
12:14 PM

No. 371582
Montcalm Circuit Court
LC No. 2023-030841-FH

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

Defendant, Shawn Gale Rosenbrook, appeals as of right his jury trial convictions of having possession of metallic knuckles, MCL 750.224(1); being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; carrying a concealed weapon, MCL 750.227; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to serve 26 months to 10 years' imprisonment for possession of metallic knuckles, being a felon-in-possession, and carrying a concealed weapon to be served consecutively with a sentence of 24 months' imprisonment for felony-firearm. On appeal, defendant argues that the trial court erred by denying his request for a self-defense instruction, denying his motions for a mistrial, and instructing the jury that he could be guilty of felony-firearm on the basis of being a felon-in-possession when being a felon-in-possession was not included as a predicate offense in the information. We affirm.

## I. FACTS

This matter arises out of a November 2023 incident involving an argument between defendant and his wife. Defendant had been involved in an affair with his employee, Baili, for several months. On the day of the incident, with Baili on speakerphone, defendant admitted to the affair. Defendant's wife then started recording the conversation. According to defendant's wife, she followed defendant into the breezeway of their home where he picked up a rifle. Defendant realized he was being recorded and attempted to hide the rifle in a box in the adjacent garage. The couple went back into the house and continued arguing. Defendant packed a bag and returned to

-1-

the garage. Defendant's wife followed, after which she alleged that defendant pointed the rifle at her. Defendant's wife did not capture defendant pointing the rifle at her on video.

According to defendant, after his wife learned of the affair, the couple argued in the kitchen. During the argument, it was defendant's wife who pulled out the rifle and pointed it at him. Defendant claimed that, in self-defense, he took the rifle from his wife, ran to the garage, and hid the rifle. He eventually took his workbag and went to the road to wait for the police.

Michigan State Police Trooper Steven Schutter met defendant about a mile down the road from the house. Defendant consented to a search of his backpack during which Trooper Schutter found a lockbox. Trooper Schutter and defendant returned to the house where other officers were searching for the rifle. During a second search of defendant's backpack, Trooper Schutter found a double-edged knife and another knife with brass knuckles attached as the handle. Trooper Schutter arrested defendant on the basis of the knives and took defendant to jail. After defendant left, Michigan State Police Sergeant Brian Lucha found the rifle in the garage.

On the morning of trial, the trial court and counsel met to discuss the trial court's changes to the felony-firearm charge instructions. The instructions now included being a felon-in-possession as a predicate offense. On the record, defense counsel stated that she had no concerns with the preliminary instructions. Defense counsel did not object at any point to the instructions. During trial, defense counsel moved twice for a mistrial—once on the basis of his wife's testimony that defendant had used methamphetamines and once on the basis of a discovery violation regarding testimony about the contents of defendant's lockbox. The trial court denied both motions. After the close of proofs, the trial court denied defendant's request for a self-defense instruction regarding the firearm-related charges. Defendant was acquitted of assault with a dangerous weapon but convicted of the remaining charges. Defendant now appeals.

## II. ANALYSIS

### A. SELF-DEFENSE INSTRUCTION

Defendant first asserts that the trial court abused its discretion by denying his request for a self-defense instruction to being a felon-in-possession. We disagree.

"To preserve an issue, a party must raise it before the trial court." *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021). The parties engaged in a conference off the record regarding defendant's requested self-defense instruction. Defense counsel argued on the record that the trial court's decision not to allow an instruction on self-defense regarding all firearm charges conflicted with defendant's constitutional right to defend himself. Therefore, the issue is preserved. See *id*. Though the prosecution argues that the issue is not preserved because defendant included additional caselaw on appeal, "so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *McCoy v Berrien Co Clerk*, 348 Mich App 602, 612; 19 NW3d 897 (2023) (quotation marks and citation omitted).

"[W]e review a trial court's determination whether a jury instruction is applicable to the facts of a case for an abuse of discretion." *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013). "An abuse of discretion occurs when the [trial] court chooses an outcome that falls

outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "We review questions of law arising from the provision of jury instructions de novo." *Id*.

"[S]elf-defense is an available defense to the charge of being a felon in possession if supported by sufficient evidence." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (*Dupree II*). If the defendant proffers "some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," then the prosecution bears the burden to disprove that the defendant acted in self-defense beyond a reasonable doubt. *Id*. at 709-710. Additionally, if a defendant "puts forward some evidence in support of their affirmative-defense theory," then the defendant is "entitled to an instruction on that theory." *People v Leffew*, 508 Mich 625, 644; 975 NW2d 896 (2022).

Under the Self-Defense Act (SDA), the use of nondeadly force is justified as follows:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [MCL 780.972(2).]

The SDA "*expanded*, rather than contracted, the ability to invoke the affirmative defenses of self-defense and defense of others" by expanding " 'the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat.' " *Leffew*, 508 Mich at 641, quoting *Dupree II*, 486 Mich at 708. "[A]side from limiting one's duty to retreat, the statute did not modify or abrogate the common-law defenses of self-defense or defense of others." *Leffew*, 508 Mich at 641.

In *People v Dupree*, 284 Mich App 89; 771 NW2d 470 (2009) (*Dupree I*), this Court determined that, under the common-law, a defendant may raise the defense of self-defense to being a felon-in-possession if the defendant produces evidence of the following:

> (1) The defendant or another person was under an unlawful and immediate threat that was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm, and the threat actually caused a fear of death or serious bodily harm in the mind of the defendant at the time of the possession of the firearm.

> (2) The defendant did not recklessly or negligently place himself or herself in a situation where he or she would be forced to engage in criminal conduct.

> (3) The defendant had no reasonable legal alternative to taking possession, that is, a chance to both refuse to take possession and also to avoid the threatened harm.

> (4) The defendant took possession to avoid the threatened harm, that is, there was a direct causal relationship between the defendant's criminal action and the avoidance of the threatened harm.

(5) The defendant terminated his or her possession at the earliest possible opportunity once the danger had passed. [*Dupree I*, 284 Mich App at 108].

The Michigan Supreme Court affirmed the decision of this Court in *Dupree II*. As that Court indicated, the defendant testified in that matter that Damond Reeves, a 300-pound intoxicated man, shoved his sister-in-law off of a porch, as a result of which defendant intervened. Reeves then grabbed onto the defendant and pulled him off the porch. While wrestling on the ground, the defendant realized that Reeves had a gun, took possession of the gun, and shot Reeves, who continued to struggle with him even after being shot three times. Afterwards, the defendant retained possession of the gun until he and his companion fled the area in a car, whereupon he threw the gun from the window of the vehicle. Although the evidence was unclear concerning how long Reeves stayed in the vicinity of the house and posed a threat to the defendant, "[u]nder these facts, defendant introduced sufficient evidence from which the jury could have concluded that defendant violated the felon-in-possession statute but that his violation could be justified because he acted in self-defense." *Dupree II*, 486 Mich at 709.

At trial in the present case, defendant admitted to holding the gun but asserted that it was in self-defense. Defendant testified that, while in the kitchen, he and his wife he engaged in another argument. During the argument, defendant claims she pulled out the rifle from behind her and pointed it at him. In response, defendant said he took the rifle and ran from the kitchen to the garage. He said he then took the clip out of the rifle and tried to hide the rifle in a toy box in the garage to prevent his wife from using the rifle. He denied having ever pointed the gun at her. Defendant testified that, after hiding the rifle, he left the house and waited by the road for the police.

However, unlike in *Dupree*, where there was no dispute that Reeves brought the gun to the incident, the undisputed evidence in the present matter is that it was defendant, a convicted felon, who brought the gun onto the premises. First, defendant's wife testified that on Tuesday, November 14th, defendant told her that Baili and her family were threatening her and defendant, and that that was the reason he brought the gun to their house on Thursday night. She said she never touched the weapon, and that he pointed it at her, told her during the argument that he brought it to protect her, and simply made up the story about her pointing it at him. Defendant's wife's testimony is corroborated by a video admitted as evidence at trial in which defendant can be heard saying "I brought a gun here. I brought a gun here. So f*****g what." Defendant denied during the trial that he pointed the gun at her.[1] But he never even attempted to rebut the evidence indicating that he brought the gun onto the premises. Thus, defendant cannot meet the second prong of *Dupree I*, i.e., he cannot demonstrate that he did not negligently place himself in a situation where he or she would be forced to engage in criminal conduct when he illegally brought

---

[1] At some point during cross-examination, defendant arguably admitted to possessing the gun prior to the incident. The prosecutor asked, "you said you took the gun from her that you think she must have got out of the gun safe, right?" Defendant answered, "[i]t had to have come out of the gun safe." The prosecutor then asked, "I mean, how do you know it was in the gun safe, the gun was in the gun safe?" He answered, "That's where we lock it up at." In follow-up questioning, defendant then claimed he did not have access to the safe.

a gun onto the premises. As a result, under the facts of this case, defendant did not introduce "sufficient evidence from which the jury could have concluded that defendant violated the felon-in-possession statute but that his violation could be justified because he acted in self-defense." *Dupree II*, 486 Mich at 709. In other words, defendant did not provide sufficient evidence for a jury instruction on the common law affirmative defense of self-defense. *Id*. at 708.

Accordingly, the trial court did not abuse its discretion by denying defendant's request for a self-defense instruction regarding the charges of being a felon-in-possession and felony-firearm predicated on being a felon-in-possession.

## B. MOTION FOR A MISTRIAL

Defendant next asserts that the trial court erred by denying his motion for a mistrial in light of statements by the testifying officers about defendant's potential drug use. We disagree.

"To preserve a claim that there was an irregularity warranting a mistrial, [a] defendant [has] to move for a mistrial in the trial court and assert the same ground for relief before the trial court that he asserts on appeal." *People v Haynes*, 338 Mich App 392, 410; 980 NW2d 66 (2021).

In the present case, defense counsel first moved for a mistrial on the basis of his wife's comment that defendant used methamphetamines. Therefore, the issue whether the trial court erred by denying the motion for a mistrial on the basis of defendant's wife's comment is preserved. However, neither of defense counsel's motions for a mistrial were made on the basis of statements made by Trooper Schutter and Sergeant Lucha that referred to potential drug use by defendant. Therefore, the issue whether the officers' testimonies alluding to defendant's drug use warranted a mistrial is not preserved.

We review a trial court's decision to grant or deny a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). An abuse of discretion occurs when "the trial court [chooses] an outcome that is outside the range of principled outcomes." *Id*. We "review[] unpreserved errors for plain error affecting substantial rights." *Haynes*, 338 Mich App at 410. Under the plain-error standard, the defendant must show "(1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). Even when these requirements are satisfied, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citation omitted; second alteration in original).

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Ortiz-Kehoe*, 237 Mich App 508, 513-514; 603 NW2d 802 (1999). "[T]he extent of the prejudice is a critical factor: '[T]he moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way.' " *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021) (citation omitted; second alteration in original). "[A]n unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App

217, 228; 530 NW2d 497 (1995). "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). See also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000).

In the present case, during an exchange with defense counsel, defendant's wife stated, "At the time, I didn't know he was having an affair." Defense counsel then asked, "You had testified that it was the day before, on the 14th, that you found out about him and Baili?" Defendant's wife responded, "I found out on the 14th that [defendant] and Baili were doing meth together . . . ." The trial court interrupted defendant's wife's statement and instructed her to "be responsive to the specific question." The trial court also issued an immediate curative instruction directing the jury to disregard defendant's wife's last answer.

The trial court's instruction is presumed to cure any potential error arising from defendant's wife's testimony about defendant's drug use, and the jury is presumed to follow the instruction. See *Abraham*, 256 Mich App at 279. Further, her "unresponsive, volunteered answer" to a proper question by defense counsel regarding when defendant's wife learned about the affair "is not grounds for the granting of a mistrial." *Haywood*, 209 Mich App at 228. Therefore, the trial court did not abuse its discretion by denying defendant's motion for a mistrial on the basis of defendant's wife's comment regarding defendant's drug use.

Defendant asserts that statements about his potential drug use by police witnesses were prejudicial. Trooper Schutter testified that he searched defendant's backpack a second time to look for possible evidence of drugs after another officer had noticed "white residue" on defendant's lockbox. Trooper Schutter agreed that the officers never found any drugs. Trooper Schutter continued, "I believe the victim had also indicated, by that time, Baili and the defendant were possibly, or were known to be using—[.]" At this point, Trooper Schutter was interrupted by defense counsel's hearsay objection, which the trial court sustained. Defendant did not request a curative instruction. Additionally, Sergeant Lucha testified that a magazine for the rifle was eventually found in defendant's lockbox that he seized after a K-9 dog alerted on the lockbox after an officer noticed "white powder" on the box. Again, defendant did not request a curative instruction.

The officers' statements about defendant's potential drug use were "unresponsive, volunteered answers to a proper question" and are not grounds for a mistrial. *Haywood*, 209 Mich App at 228. First, Trooper Schutter's statements arose when explaining why he searched defendant's backpack a second time. Trooper Schutter clarified that no drugs were ever found. Second, Sergeant Lucha's statement arose when explaining how the rifle magazine was eventually found in defendant's lockbox. An "unexpected and volunteered response" alluding to a defendant's drug use does not warrant a mistrial when the error "could have been cured by a curative instruction had defense counsel moved for a curative instruction." *People v Barker*, 161 Mich App 296, 307; 409 NW2d 813 (1987). Similarly, in the present case, if defendant had requested a curative instruction regarding the officers' statements about "white residue," "white powder," and "using," then any error could have been cured.

Therefore, the trial court did not commit plain error by denying defendant's motion for a mistrial in light of the officers' potentially prejudicial testimony.

## C.  FELONY-FIREARM INSTRUCTIONS

Finally, defendant asserts that the trial court erred by instructing the jury that he could be guilty of felony-firearm on the basis of either felonious assault or being a felon-in-possession.  We disagree.

When a defendant "expressly and repeatedly approv[es] the jury instructions on the record, [the] defendant waive[s] any objection to the erroneous instructions, and there is no error to review."  *Kowalski*, 489 Mich at 504.  In the present case, the trial court met with counsel on the morning of trial to discuss the trial court's inclusion of being a felon-in-possession as a predicate offense to the felony-firearm charge.  When the trial court noted the change on the record at the start of trial, defense counsel stated that she had no concerns with the preliminary jury instructions.  Next, the trial court and counsel again discussed the addition of the felon-in-possession predicate offense after the trial court added it to the printed jury instructions during a break.  Though in this instance defense counsel did not explicitly state that she had no objections, defense counsel did not object to the instructions and thanked the trial court for the printed copy.  Later, the trial court again met with counsel off the record to discuss the final jury instructions.  Both parties declined to state anything on the record regarding the final jury instructions as discussed.  Because defense counsel discussed the instructions with the trial court and repeatedly declined to object or state anything on the record regarding the instructions, the issue is waived.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace