*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRICK LEE MENARA,

        Defendant-Appellant.

UNPUBLISHED
January 26, 2023

No. 357029
Gogebic Circuit Court
LC No. 2020-000165-FH

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), conspiracy to possess with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*); MCL 750.157a, and maintaining a drug house, MCL 333.7405(1)(d). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 20 to 50 years in prison for both the possession with intent to deliver methamphetamine and conspiracy to possess with intent to deliver methamphetamine convictions, and 46 months to 15 years in prison for the maintaining a drug house conviction. Defendant appeals by right, and we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On August 17, 2020, police responded to the Walmart located in Ironwood, Michigan for an alleged shoplifting committed by two men, one of whom had already fled the scene. Police found Joshua Perren alone in a vehicle in the parking lot. Perren was not in the driver's seat and did not have the vehicle keys. Perren appeared to be under the influence of controlled substances. Police found drug paraphernalia both on Perren's person and inside the vehicle. Police learned that Perren and defendant had been staying at the Timberline Lodge in room 109, and police went to that location. Peering into the window of the room, police observed a loaded syringe lying on a table. Given that such syringes were often sold by drug dealers, police obtained and executed a search warrant for the room. Police found extensive drug paraphernalia as well as drugs in the room.

On August 20, 2020, police returned to the Walmart after receiving a tip that defendant had returned there in a white vehicle with checkered stripes. Carli Stein occupied the driver's seat. She appeared to be under the influence of controlled substances, had visible needle marks, and was arrested. Defendant, the passenger, was also arrested and searched. His interaction with the police was recorded on a body camera. Defendant's cell phone was retrieved, and he provided the access code to police. Defendant admitted that there were numerous incriminating text messages on his cell phone in which he attempted to sell drugs to others, revealed that he was hiding from police, and sought assistance to leave the area undetected.

At trial, defendant testified that he was in town to visit his daughter and granddaughter. Defendant did not have a valid driver's license so Perren drove defendant's vehicle from Wisconsin to Michigan. They stayed at the Timberline Lodge because defendant's cousin, Nate Noble, was the manager and allowed them to stay in a room. Defendant placed his jeans in the motel room. After catching a glimpse of an exchange between Perren and Noble, defendant concluded that a drug exchange occurred. Defendant admitted that he had prior police contacts for drugs but claimed to be sober for a couple of months. He did not want to be involved in drug activity, made an excuse to leave, drove his vehicle to an Econo Lodge, and checked into a room there.

That evening, defendant picked Perren up, and they went to Walmart. Defendant had spent all of his money and admitted to shoplifting items. After the buzzer sounded when defendant left the store, he took off running because there was a police station at the Walmart, and he was unsure whether there was a police officer pursuing him. Despite defendant's prior admission to the police regarding drug activity, in his testimony, he now denied selling any drugs in the area and claimed that Perren had done so without his knowledge or assistance. Additionally, he gave contradictory testimony regarding any sale of drugs. Defendant denied selling any methamphetamine and noted no such drug was found on his person. However, he acknowledged to having "weed" for sale but testified that it was "legal." Defendant denied that terms or abbreviations used in his text messages, such as "up and down," "hz,"[1] or "8ball" were unique to drugs such as methamphetamine and did not apply to the sale of marijuana.[2] But defendant later testified that he lied in his text messages about the drugs he had available for sale in order to obtain a ride out of Ironwood. Yet, defendant admitted that he had agreed to introduce Perren to people in the area so that Perren could sell drugs. Finally, defendant testified that he had previously been to the area with drugs. Despite defendant's testimony identifying Perren as the culprit, the jury convicted defendant as charged.

## II. MISTRIAL

Defendant contends that the trial court abused its discretion by denying his motion for a mistrial in light of prejudicial testimony from Sergeant Matt Sterbenz. We disagree.

---

[1] According to the narcotics enforcement officers, "hz" stood for "half a zip" and signified half an ounce of methamphetamine or 28.3 grams.

[2] Defendant's testimony was contrary to the testimony of police officers assigned to narcotic enforcement.

The trial court's denial of a motion for a mistrial is reviewed for an abuse of discretion. *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). An abuse of discretion occurs when the trial court's decision falls "outside the range of principled outcomes." *Id*.

"Defendant had the right to be tried by an impartial jury." *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021). A mistrial may be granted in limited circumstances:

> The trial court should only grant a mistrial for " 'an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial' " and when "the prejudicial effect of the error cannot be removed in any other way." The trial court may consider, among other things, whether the prosecutor intentionally presented the information to the jury or emphasized the information. [*People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (citations omitted).]

Although a volunteered and unresponsive answer to a permissible question does not generally warrant a mistrial, when a volunteered response has been given by a police officer, this Court scrutinizes the testimony to ascertain whether the response resulted in undue prejudice to the defendant. *People v Holly*, 129 Mich App 405, 415; 341 NW2d 823 (1983). This Court has also determined that

> [a] witness cannot bring error into a case by volunteering inadmissible testimony which is immediately stricken out. It may be true that such remarks work a certain amount of mischief with the jury, but a conviction is to be tested on appeal by the rulings of the judge. A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the jury; and if what he or she says or does improperly is likely to do much mischief, it is presumed that the judge will apply the proper corrective measures in his or her instructions if requested to do so. Unresponsive testimony by a prosecution witness, although error, is not necessarily grounds for reversal. Generally, the failure of defense counsel to request a curative instruction regarding a gratuitous answer will preclude appellate review of the issue in the absence of a showing of manifest injustice. [*People v Barker*, 161 Mich App 296, 306; 409 NW2d 813 (1987).]

Furthermore, under MCL 769.26, "[n]o judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless . . . it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

In *Barker*, there was an issue regarding the ownership and possession of a home. A police officer opined that the defendant resided at the home because he found an envelope addressed to the defendant at the residence from the defendant's wife. *Barker*, 161 Mich App at 306-307. The officer was asked if it was apparent from the letter if the wife also resided at the home. In light of the content, the officer opined that the wife did not reside there but he then volunteered that the wife accused the defendant of turning their son into "a dope dealer." This Court held that the trial court did not abuse its discretion by denying a motion for mistrial when a police officer offered unresponsive testimony about the defendant having been accused "of turning their son into a dope

dealer." *Id*. at 306-307 (quotation marks omitted). We concluded that "[a]ny mischief worked by reason of the unexpected and volunteered response could have been cured by a curative instruction had defense counsel moved for a curative instruction." However, defense counsel did not make that request for tactical reasons. *Id*. at 307. Furthermore, where there was no indication that the prosecution knew in advance that the witness would respond in the manner indicated and did not conspire or encourage the response, the defendant was not denied a fair trial. *Id*. at 307-308.

In the present case, there appears to be no dispute from defendant that the prosecution did not intentionally elicit the responses from Sergeant Sterbenz, there was no request for a curative instruction, and the record clearly demonstrates that most of the volunteered remarks were unresponsive. In the first challenge to improper testimony, the prosecution merely asked Sergeant Sterbenz if defendant had previously stayed at the Timberline Lodge. Sergeant Sterbenz replied, "I was involved with [the hotel manager] on prior occasions at which he had advised me that [defendant] had been there on a previous time and stayed there, *and he explained to me that he believed that he was selling controlled substances from there*." The initial portion was admissible and responsive, but the latter portion was not and was properly excluded by the trial court. Whether defendant had sold controlled substances from the Timberline Lodge was unresponsive to the prosecution's question about whether defendant had previously stayed there.

In the next challenged testimony, the prosecution merely asked Sergeant Sterbenz if there were unique characteristics about Stein's vehicle that allowed it to be located in the Walmart parking lot, to which Sergeant Sterbenz replied:

> The first time that I dealt with . . . Michael Noble, earlier in the day, he advised us that he had seen [defendant] and a Mexican in a white vehicle with checkered on it. He thought it was a Monte Carlo. During that time he said that *[defendant] had pulled a gun on him*. And when I pulled into the parking lot at Walmart I had seen a vehicle fitting that description. [Emphasis added.]

Defense counsel objected to the "pulling a gun" statement, without citing an evidentiary basis, and requested that it be stricken. The trial court concluded that the statement was hearsay and sustained the objection.[3] The portion relating to the gun was unresponsive and did not address the vehicle characteristics. Therefore, the trial court properly excluded it. The other parts of the testimony were admissible and responsive to the prosecution's question. Because Sergeant Sterbenz's testimony involved unresponsive replies that were immediately stricken by the trial court and there was no indication that the prosecution encouraged the responses, defendant failed to demonstrate

---

[3] Gogebic County Sheriff's Deputy Cody Smith testified officers were concerned about their safety when they approached defendant's vehicle in the Walmart parking lot because of the report by a tipster. Specifically, the tip regarding defendant's whereabouts included the assertion that defendant "may be armed." Deputy Smith did not testify that defendant had previously threatened the tipster with a gun. There was no objection to this testimony of Deputy Smith by defense counsel, and on cross-examination, Deputy Smith testified that no gun was found on defendant or in a vehicle.

-4-

that the trial court abused its discretion by denying the motion for mistrial because the responses did not deprive him of a fair trial. See *Barker*, 161 Mich App at 306-307.

Lastly, defendant submits that testimony regarding filed-down keys warranted a mistrial. Specifically, Sergeant Sterbenz testified that, in the course of the investigation, filed-down keys were located. The prosecution then asked, "What does that mean." Sergeant Sterbenz replied, "There was times [sic] where people will take a key for a car and if they file part of the ridges off of them they can use them to start other cars, so it's . . . just a way . . . *people can attempt to steal a car*." Although the prosecution did not explicitly ask about whether such keys were used for stealing, the prosecution did ask an open-ended question about the nature and meaning of the filed-down keys, and Sergeant Sterbenz answered the question posed. Although his response can be considered responsive to the question, the trial court did not abuse its discretion by denying the motion for mistrial. Defendant's trial counsel objected on relevancy grounds and the trial court sustained that objection. At that time, a curative instruction was not requested. At the conclusion of the trial, the jury was instructed not to consider inadmissible evidence, and jurors are presumed to follow the trial court's instructions. *People v Walker*, 330 Mich App 378, 386 n 3; 948 NW2d 122 (2019). Moreover, generalized statements about what filed-down keys *may* be used for did not prejudice the jury against defendant such that the only remedy was a mistrial. Defendant was not charged with stealing a vehicle, and Sergeant Sterbenz did not testify that defendant was using the keys to steal a vehicle. Under the circumstances, we cannot conclude that the trial court abused its discretion in denying the requested mistrial.[4]

## III. PROSECUTORIAL MISCONDUCT

Defendant submits that he was deprived of a fair trial in light of prosecutorial misconduct. We disagree.

A claim of prosecutorial misconduct as a violation of constitutional due process is reviewed de novo. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). However, because defendant either failed to object to the complained of prosecutorial conduct or did so on different grounds than those raised on appeal, we review this unpreserved issue "for outcome-determinative, plain error." *People v Seals*, 285 Mich App 1, 21-22; 776 NW2d 314 (2009). This Court will reverse "only when the plain error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial

---

[4] During the testimony of Deputy Smith, there was also a reference to defendant's appearance while in jail. Defense counsel did not object to the statement when it occurred. Outside the presence of the jury, defense counsel requested that any additional police witnesses be instructed not to mention jail before the jury. He noted that a contemporaneous objection was not made because he did not want to draw the jury's attention to the reference. Yet, when defendant testified, he candidly admitted to the sale of marijuana and to engaging in shoplifting. He also acknowledged owning a lock pick set to practice picking locks. Furthermore, defendant recognized prior police contacts for drugs and his cooperation with the police in order to avoid being arrested. In fact, defendant attempted to cooperate in a transaction to avoid arrest for the instant offenses. These admissions and disclosures by defendant further demonstrate that the trial court did not abuse its discretion in denying the motion for mistrial.

proceedings." *Id.* at 22, citing *People v Carines*, 460 Mich 750, 764-767; 597 NW2d 130 (1999). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 22.

To prevail on a claim of prosecutorial misconduct, the defendant must demonstrate that he was deprived of a fair and impartial trial. *Solloway*, 316 Mich App at 201. This Court must review the relevant part of the record and evaluate a prosecutor's statements in context. *Id.* "Otherwise improper prosecutorial remarks generally do not require reversal if they are responsive to issues raised by defense counsel." *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000), overruled on other grounds by *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004). A defendant's right to a fair trial may be violated when the prosecutor interjects issues broader than the guilt or innocence of the accused. *Lane*, 308 Mich App at 66; *People v Rice*, 235 Mich App 429, 438; 597 NW2d 843 (1999).

A prosecutor must refrain from denigrating a defendant with intemperate and prejudicial remarks. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). "The prosecutor was fully entitled to challenge the defendant's claim of good character, either upon cross-examination or through extrinsic evidence in rebuttal." *People v Buchee*, 400 Mich 253, 262; 253 NW2d 626 (1977). "[W]hen a defendant seeks to controvert the truth-seeking functions of a criminal trial, the introduction of otherwise inadmissible evidence is permissible to contradict his false testimony." *People v Williams*, 93 Mich App 236, 242; 287 NW2d 184 (1978). Accordingly, evidence may be admitted not to demonstrate the defendant's bad character but "used specifically to negate his fraudulent testimony," and its introduction does not constitute reversible error. *Id.* Further, the prosecutor may not make a statement of fact that is unsupported by the evidence. *Lane*, 308 Mich App at 67. The prosecutor is given great latitude pertaining to their opening and closing arguments and may argue the evidence and all reasonable inferences from the evidence as it pertains to their theory of the case. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). "A prosecutor may argue from the facts that a witness is credible or that a witness is not worthy of belief." *People v Unger*, 278 Mich App 210, 240; 749 NW2d 272 (2008).

Defendant first takes issue with the prosecutor's closing remarks explaining the role of circumstantial evidence:

> On the other hand, and I agree there's no smoking gun, but we all know that there's such a thing as people getting . . . for example . . . prosecuted for a murder when they don't find the body. You can prove a murder without a body just like we can prove intent to deliver meth. *There's been many successful prosecutions, whether it's drugs or otherwise, but, in terms of drugs, without direct evidence, and that's why . . . there's a special instruction for you to consider called circumstantial evidence.* Direct evidence is I saw him pull out the gun and shoot it and the person dropped. Circumstantial evidence, well, I was a half mile away, I heard bang, and I came up a little bit later and I saw this person laying in the ditch. Nobody saw the person that pulled the trigger. And in this case, nobody saw a direct delivery, *but I submit to you that's not required in a case like this, and there's been many successful prosecutions without direct evidence.* (Emphasis added.)

This claim of prosecutorial misconduct does not demonstrate plain error. The prosecutor merely explained a standard of evidence to the jury and how such evidence may be sufficient to convict a defendant. The prosecution did not interject issues broader than the guilt or innocence of defendant, nor did the prosecution imply that it had some special knowledge of defendant's guilt or innocence. Moreover, the prosecutor's argument responded to defendant's testimony that he could not be convicted because the police failed to find methamphetamine on his person. This claim of misconduct is without merit.

Defendant next alleges that the prosecutor mischaracterized the evidence in stating:

> [Defendant] makes an issue about these text messages. Nothing about it prior to checking in. Well, guess what? *Didn't you hear Cody Smith say that the analysis it appeared that these prior texts were wiped off the phone, they didn't find anything.* Is it because perhaps they were deleted by the defendant because they were way more incriminating, setting up transactions than what was after the fact? I don't know. You decide as the fact finder. [Emphasis added.]

The prosecution on appeal concedes that Deputy Smith did not testify that prior texts were wiped off the phone.[5] However, defendant failed to show that he is entitled to relief. A curative instruction could have removed any prejudicial effect of these minimal statements. And, in light of the evidence presented at trial, defendant failed to demonstrate that he was actually innocent or that such remarks seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Seals*, 285 Mich App at 22. Defendant's phone contained numerous incriminating text messages, and defendant conceded that the text messages showed him attempting to sell drugs to people, that he helped Perren sell drugs in the area, and that defendant had previously brought drugs to the area.

Defendant also claims that the prosecutor engaged in misconduct through his questioning of defendant and his closing argument addressing defendant's former girlfriend, Stein. We disagree.

The prosecutor questioned defendant regarding why Stein, although pregnant, had track marks on her hand, why defendant allowed her to use drugs while pregnant, why he allowed her to drive while using drugs, and why he continued to associate with drug users. Defendant explained that the couple were no longer together, that he could not control what Stein, a heroin addict, did to her body, that Stein was the only individual who responded to his request for a ride, and that his association with her at that time was because of his circumstances. The prosecutor also drew attention to this testimony about defendant's associates in his closing remarks:

> But don't you think—again, I'm drawing on your human nature. *Isn't it fair to say that we're allowed to judge people by who they hang with?* Right? I mean, if all my friends were priests and pastors, you'd think of me one way. If all my friends were weightlifters, you'd probably think of me another way. What would you think

---

[5] At trial, the prosecutor asked *defendant* to explain why there were no text messages before August 18, and he responded, "I don't know."

of me if you knew that all of my friends are druggies?  What does that say about me?  *What does that say about Mr. Menara when his friends are Carli Stein, who's pregnant and sticking herself with drugs?  How does that sit with you?  Not only is that is friend, that's his girlfriend and she's carrying his baby.  What does that say about the defendant?*  [Emphasis added.]

Defendant challenges this testimony and argument as constituting an improper character attack on him under MRE 404(a).  Relevant to this appeal, MRE 404(a) provides:

Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) *Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same*; or if evidence of a trait of character of the alleged victim of the crime is offered by the accused and admitted under subdivision (a)(2), evidence of a trait of character for aggression of the accused offered by the prosecution[.]  [Emphasis added.]

However, assuming that association with acquaintances is evidence of character, defendant had previously testified that he left the Timberline Lodge because he "wanted to separate" himself from any drugs because he was sober.  He also testified that he did not give any drugs to Stein.  Therefore, the prosecution was merely attempting to attack defendant's earlier testimony that he was sober and desired to separate himself from any drugs.  In doing so, the prosecution inquired as to why defendant would be with Stein in a vehicle while she was using drugs.  If defendant truly had been focused on his sobriety and keeping his distance from drugs and drug users, it made little sense as to why he would travel with a drug user and not seek to prevent Stein from using drugs while pregnant with his child.  Thus, the evidence of defendant's association with Stein was admissible to the extent it sought to rebut defendant's claim that he was sober and removed himself from individuals involved with drugs to maintain his sobriety.  See *Williams*, 93 Mich App at 242 (evidence may be admitted not to demonstrate the defendant's bad character but "used specifically to negate his fraudulent testimony" and its introduction does not constitute reversible error.).

But instead of simply attacking defendant's testimony, the prosecution's argument essentially asked the jury to judge defendant not on the basis of his actions but on the basis of whom he was spending time with.  Accordingly, the prosecution interjected issues broader than the guilt or innocence of the accused, and it also appears that the prosecution essentially attempted to inflame the jury by focusing on an unborn baby's exposure to drugs.  Nevertheless, under the plain-error standard of review, defendant has failed to show that he was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.  As previously discussed, there was overwhelming evidence to convict defendant.  Defendant's text messages seeking to complete drug transactions, defendant's own statements to police that incriminated him, and the presence of drugs and drug paraphernalia in defendant's vehicle and

motel room  the elements of the charged offenses.[6]  Furthermore, a curative instruction would have cured this error.

Finally, defendant contends that the prosecution improperly commented on defendant's credibility and indicated that it had special knowledge regarding credibility in its closing argument. However, a review of the statements reveal that they were not improper.  The prosecution merely argued that, in light of the evidence, defendant's story was not worthy of belief.  The prosecution did not imply that it had some special knowledge; rather, the prosecution referenced the evidence at trial and contended that, based on this evidence, defendant should not be believed.  Defendant is not entitled to relief.[7]

## IV.  SENTENCING

Lastly, defendant argues that the trial court abused its discretion by assessing 10 points for OV 14 and OV 19.  We disagree.

The appellate court reviews sentencing decisions for an abuse of discretion.  *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018).  A court abuses its discretion when its decision is outside the range of principled outcomes.  *Id*. at 133.  The trial court's fact-finding is reviewed for clear error and questions of law are reviewed de novo.  *Id*. at 137 n 27.  "We review de novo whether the facts as found were adequate to satisfy the statutory scoring conditions."  *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020).

A defendant is entitled to be sentenced on the basis of accurate information.  *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009).  "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *Id*. at 133.  A defendant is entitled to resentencing when a trial court commits an error in scoring the sentencing guidelines and when this error "altered the appropriate guidelines range."  *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006).

OV 14 provides that, if a defendant is "a leader in a multiple offender situation," 10 points are assessed.  MCL 777.44(1)(a).  The trial court should consider the "entire criminal transaction," MCL 777.44(2)(a), and, if there were three or more offenders involved, "more than 1 offender may be determined to have been a leader," MCL 777.44(2)(b).  "Leader" has been defined as the "guiding or directing head of a group."  *People v Ackah-Essien*, 311 Mich App 13, 39; 874 NW2d

---

[6] Defendant testified that he simply took jeans into the Timberline Lodge and never stayed there. The validity of this testimony presented a credibility issue for the jury.  The jury was entitled to conclude that this testimony was self-serving and designed to dissociate defendant from the drug evidence found in the motel room.  Additionally, defendant's testimony was belied by the content of the text messages.

[7] Within the discussion of this issue, defendant alternatively alleged that defense counsel was ineffective for failing to object to improper testimony and argument.  This claim was not properly submitted for review because it was not raised in the statement of questions presented, and therefore, we decline to address it.  *Unger*, 278 Mich App at 262; MCR 7.212(C)(5).

172 (2015) (citations and quotation marks omitted). A "multiple offender situation" has been defined as "a situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880; 834 NW2d 485 (2013).

In the present case, there was adequate evidence for the trial court to conclude that defendant was a leader for purposes of OV 14. Defendant and Perren drove together to Ironwood and checked into the Timberline Lodge. Police found extensive drug paraphernalia and drugs in the motel room and drug paraphernalia on Perren's person. Police also found drugs on Stein, and Stein's vehicle contained drug paraphernalia. Defendant's phone contained numerous text messages showing that he was attempting to sell drugs in the area and that he was directing other people's actions, i.e., acting as the leader, including those of Perren. Defendant himself conceded that the text messages showed him attempting to sell drugs to people, that he helped Perren sell drugs in the area, that defendant had previously brought drugs to the area, and that defendant had previously stayed at the same motel. In fact, defendant admitted to Perren's giving the motel manager drugs in exchange for allowing Perren and him to stay there. Thus, the trial court did not abuse its discretion in assessing 10 points for OV 14.

OV 19 addresses "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. OV 19 requires that 10 points be assessed when "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order[.]" MCL 777.49(c). OV 19 is broad and applies to more than those actions that rise to the level of " 'obstruction of justice.' " *People v Barbee*, 470 Mich 283, 286-287; 681 NW2d 348 (2004). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Smith*, 318 Mich App 281, 286; 897 NW2d 743 (2016) (alteration in original; quotation marks and citation omitted). In fact, "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense," and this includes hiding from police. *Id.* (quotation marks and citation omitted). Because law enforcement officers play an integral part in the administration of justice, a defendant's provision of a false name to law enforcement officers constitutes interference with the administration of justice warranting a score of 10 points. *Barbee*, 470 Mich at 288. Additionally, fabrications constituting self-serving attempts at deception designed to lead police officers astray satisfy the interference with the administration of justice provision of OV 19. *People v Muniz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355977), slip op at 9, lv pending.

In the present case, there was adequate evidence for the trial court to conclude that defendant hindered the police's investigation and engaged in fabrications designed to lead police officers astray, thereby justifying a score of 10 points for OV 19. Defendant conceded that he fled from the Walmart, returned to the Timberline Lodge, saw the search warrant posted on the door to his room, and "took off running." In his text messages, defendant stated that he spent two days in the woods trying to avoid detection. Additionally, defendant attempted to find a ride back to Wisconsin. Defendant's vehicle was impounded, the title was registered to another male, and the police would only release it to the title owner. Defendant texted a female and requested that she contact the police and represent that she was the title owner's wife. This fabrication was designed

to obtain the release of the vehicle such that defendant could recover it and return to Wisconsin. Moreover, his text messages showed that he was well aware that police were searching for him, that he was hiding from police, and that he was attempting to leave the area; defendant even attempted to utilize other people to avoid detection. This was not a situation in which defendant was improperly punished for failing to turn himself in. Defendant's fabrication and active deception to hide from the police was designed to hinder the police investigation and justified the score for OV 19.

     Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica